Argued May 19, reversed in part and remanded June 17, 1953

# LAURANCE *v.* LAURANCE

258 P. 2d 784

*O. H. Bengtson,* of Medford, argued the cause and filed a brief for appellant.

*Ray B. Compton,* of Roseburg, argued the cause and filed a brief for respondent.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK, TOOZE and PERRY, Justices.

ROSSMAN, J.

This is an appeal by the defendant (wife and mother) from the part of a decree of divorce entered by the circuit court which awarded to the plaintiff (husband and father) the general custody of two children of which the parties are the parents. The children, boys, are eight and ten years of age. Although the defendant filed an answer to the complaint, neither she nor any witness for her testified and the case was submitted upon the testimony given by the plaintiff and a witness called by him. The transcript of testimony covers only seven pages. The defendant-appellant does not challenge the part of the decree which severed the bonds of matrimony.

The complaint which sought the divorce upon charges of cruel and inhuman treatment contained this averment:

"Plaintiff is a fit and proper person to have the

care and custody of the minor children awarded to him; * * * the defendant is not a proper person to have the care and custody of said children awarded to her.''

The answer said:

''Admits that plaintiff is a fit and proper person to have the care and custody of said children, but further alleges that defendant is likewise a fit and proper person to have the care and custody of said children awarded to her; * * *.''

The reply declared:

''Admits that as in said property settlement it is to the best interests of said minor children that their care and custody be awarded to the defendant.''

The property settlement mentioned in the language just quoted was evidenced by a writing signed May 31, 1951. Referring to the parties and to the children, it stated:

''* * * desiring to provide as fully as they legally may for the future custody, maintenance, nurture and care of said children for the best interests particularly of said children, and each of the parties hereto for the purpose of this particular provision of this agreement waiving all animosity against the other and considering only the welfare of their respective children, it is agreed between them that each of the parties would be a suitable and proper person to have the care and custody of said minor children or either of them awarded to him or her, but further considering the tender age of said children, it is agreed that subject to the approval of the court having jurisdiction of any divorce suit between them that the care and custody of said minor children shall be awarded to the party of the second part * * *.''

The ''party of the second part'' was the defendant,

that is, the mother. After the parties had signed the property settlement agreement, the plaintiff filed a supplemental complaint in which he charged that he was induced to sign the instrument by false representations—promissory in character—made by the defendant. His pleading then continued:

> "* * * by reason of the facts aforesaid and by reason of the society and company into which defendant takes the minor children of the parties hereto and by reason of her conduct as hereinbefore alleged, defendant is not a fit and proper person to have the care and custody of said children or either of them awarded to her."

The answer of the defendant to the supplemental complaint denied its averments.

January 18, 1952, being one month after the supplemental complaint had been filed, the parties subscribed to a second property settlement agreement which contained this provision:

> "Whereas at this time the parties are again agreed that it is for the best interests of their minor children as mentioned in the complaint and amended and supplemental complaint in said cause that their care and custody be awarded to the defendant, subject to the right of Kenneth C. Laurance to visit with them and have them visit him at reasonable and seasonable times, * * * now, therefore, it is understood and agreed by and between the parties that * * * the property settlement entered into on May 31, 1951, * * * shall be and remain in full force and effect * * *."

The findings of fact state:

> "The property settlement agreements of May 31, 1951, and January 18, 1952, except as to custody of the minor children of the parties and the payment of support money for such children, which said

634

agreements were received in evidence in this suit and are marked plaintiff's Exhibit 'A' and Plaintiff's Exhibit 'B' be and the same are hereby approved.''

The presentation of evidence, as we have indicated, was brief. It showed that until discord disrupted their relationship the parties and their children made their home in Roseburg. By answering "yes" or "yes, sir" to questions put to him by his counsel, the plaintiff indicated that his wife had associated frequently with a male companion by the name of Orr. In the same way he adopted a statement of his counsel that he saw his wife in Myrtle Creek drunk in the company of Orr. According to the plaintiff, his wife and Orr made "approximately a dozen trips" together to Portland and Medford. He testified that his wife had moved into a house in Medford which Orr owns, and answered "yes" to an inquiry which asked whether Orr also lives in the house. The size, type and number of rooms in the structure were not disclosed. No intimation, or at least no express one, was made that his wife and Orr had had sexual relationships. The fact that, according to his own voluntary admissions, he twice forgave his wife for her conduct with Orr possibly warrants a belief that the liaison of the two never reached the ultimate amorous degree. He identified and, through his counsel, introduced in evidence the two documents which comprised the property settlement agreements which we have mentioned. He said nothing whatever adverse to either paper but, to the contrary, by presenting both to the court, manifestly asked it to be guided by them in reaching its decision. Concerning the children and their custody, he gave no testimony other than the following:

"Q Mr. Laurance, notwithstanding her actions

so far as you are concerned, does she take good care of the children?

"A Yes.

"Q Keeps them clean and takes good care of them?

"A Yes.

"Q Do you think it is for their best interest that she should have the care and custody of these children awarded to her?

"A Yes.

"Q Is there anything in her acts and conduct, outside of her continual association with this other man, that would in any way adversely affect the children?

"A No, sir."

Apart from the foregoing testimony, the stipulations in the property settlement agreement, and the averments in the pleadings, all of which we have fully recounted, there is nothing in the record pertaining to the children.

The transcript of evidence, apart from an utterance which we will presently mention, contains nothing indicating whether or not the plaintiff has a home into which he could take the children in the event that their custody was awarded to him, nor does it indicate whether or not there is available to him someone capable of attending the children while he may be away from home at work. The utterance to which we just referred was made by plaintiff's counsel at the close of the testimony while the trial judge and the attorneys were engaged in colloquy. At that point plaintiff's counsel declared:

"Mr. Laurance, right at the present time, at least, does not have a suitable place to take care of the children."

The decree, as we have seen, awarded the general custody of the children to the plaintiff. The findings of fact contain the following:

"The plaintiff is a fit and proper person to have the care, custody and control of the minor children of the parties awarded to him and that the defendant is an unfit person to have such care, custody and control."

The basis of that finding is possibly indicated by the following observation which the presiding judge made at the conclusion of the presentation of the testimony:

"I am not inclined to leave these children with that man Orr. He is no good."

At that juncture plaintiff's counsel made the remark which we have already quoted in part. In its entirety it runs as follows:

"I know he is no good, if the Court please, but Mr. Laurance, right at the present time, at least, does not have a suitable place to take care of the children and, while Mr. Orr is no good, it is quite probable Mrs. Laurance will marry him, at least after six months has elapsed; and he believes, at least for the present time, she can take better care of them * * *."

Continuing, counsel dwelled upon the provisions made in the property settlement agreement in behalf of the defendant which, he claimed, would enable her to care adequately for the children. At the conclusion of counsel's statement, the presiding judge said that he would take the case under advisement, adding:

"As I said before, I think Orr is no good and I am not disposed to leave anybody's children with him and the woman isn't either, apparently, or she would not be mixed up with a person like Orr. I will take this case under advisement."

■ No testimony was presented concerning the character of Orr except so far as one may gain impressions from the incidents which we have mentioned. We do not interpret the trial judge's statement as his reactions to the record, but as a disclosure by him of the fact that he possessed personal knowledge concerning Orr.

We take the following from Wigmore on Evidence, 3d ed, § 2569:

"* * * If the judge, as a man and an observer, has any personal knowledge, he may (and sometimes morally must) utilize it by taking the stand as a witness and telling in that capacity what he knows * * *.

"It is therefore plainly accepted that the judge is not to use from the bench, under the guise of judicial knowledge, that which he knows *only as an individual* observer outside of the court."

The following is quoted from 31 CJS, Evidence, § 11, p 516:

"Judicial knowledge is limited to what a judge may properly know in his judicial capacity, and he is not authorized to make his individual knowledge of a fact not generally or professionaly known the basis of his action."

We see from the foregoing that a judge is not at liberty to take into consideration, when deciding a case, personal knowledge which he possesses. *Rea v. Rea,* 195 Or 252, 245 P2d 884, which passed upon a question closely related to the one now before us, held that, in the absence of stipulation by the parties, a court, in determining the custody of children, cannot take into account personal information possessed by the judge or a report compiled for him by members of his staff. The wisdom of the rule which is set forth in the

quoted language is more readily recognized when one states the matter in this vein: No judge, no juror, no administrative official and no other fact-finder is at liberty to take into account personal knowledge which he possesses when he decides an issue submitted to him by the parties. One of the reasons which commends the rule is this: The personal information which the fact-finder possesses may be incorrect and the error could readily be demonstrated if the fact-finder submitted himself to questioning on the witness stand. We are satisfied that, in the absence of evidence upon the subject or a stipulation of the parties, the trial judge was not at liberty to take into consideration his personal information concerning Orr.

■■ When the plaintiff signed the two papers in which he stated that the defendant was a suitable person for the custody of the children, he thereby admitted her fitness, and those admissions were, of course, evidence upon the subject. The agreements into which the parties had entered concerning the custody of the children were worthy of the court's consideration but were not controlling. *Shradar v. Shradar,* 188 Or 199, 214 P2d 803; *Ward v. Ward,* 156 Or 686, 68 P2d 763, 69 P2d 963; *Addison v. Addison,* 117 Or 80, 242 P 832.

■■ In awarding the custody of the children, it was the trial judge's duty to be guided by the record and to reach no finding which lacked support. 27 CJS, Divorce, § 315(c), p 1182. The problem of awarding the custody of children is generally a difficult one and we sympathize with the trial judge's efforts to give the custody of these two boys into proper hands. *Rea v. Rea,* supra, portrays methods and ways which may be employed in child custody cases to acquaint the court with a wider range of knowledge. Seemingly, the father in this

case was disposed to shirk his duty to his offspring, and the mother's conduct revealed significant faults in her character. However, as was held in *Goldson v. Goldson*, 192 Or 611, 236 P2d 314,

> "* * * It is not for every act of indiscretion or immorality that she will be denied custody. The test is whether her conduct is so depraved, immoral, and wicked that to permit her child to remain in her custody would be injurious to its best interests."

See, to like effect, *Pachkofsky v. Pachkofsky*, 192 Or 627, 236 P2d 320. Apparently the presiding judge did not look with disapproval upon the mother's general suitability for the grave task of rearing these two boys into good manhood, but condemned her association with Orr.

We believe that when the trial judge, on account of an aversion to Orr, proposed to ignore the compacts into which the parties had entered and give the children into the father's custody, he should first have received evidence indicating that the mother's association with Orr would be detrimental to the boys, and also that the plaintiff had a suitable home for himself and his offspring.

The part of the decree which awards the custody of the boys to the father is vacated. Because the two facets of the case just mentioned are lacking in support by the record, the cause is remanded to the circuit court so that it may conduct an inquiry of the kind just mentioned. The two boys are now in the custody of the mother and they shall remain there until the inquiry has been conducted and until the circuit court, if ever, makes another disposition of them.

Reversed in part and remanded.