**Lorraine M. Nowaczyk, Plaintiff-Appellant, v. Dale F. Welch and W. C. Brooks, d/b/a Brooks Trucking Company, Defendants-Appellees.**

**Gen. No. 51,881.**

First District, Fourth Division.

March 5, 1969.

Irving Goodman, of Chicago, for appellant.

Beverly and Pause, and John J. O'Malley, of Chicago, for appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

Plaintiff filed suit against defendants for personal injuries sustained in an automobile accident. This appeal is taken from an order dismissing the case for want of prosecution.

After one change of venue the case was assigned to Judge Canel for trial, and on May 3, 1966, Harold L. Ward, attorney for plaintiff, and John J. O'Malley, attorney for defendants, picked a jury. The case was con-

tinued to the following morning for opening statements and the hearing of evidence.

On May 3, 1966, at 10:00 p. m., Ward called O'Malley at his home to advise him that he was ill and would be unable to proceed with the trial on the following day. O'Malley advised Ward to prepare medical testimony to support his claim so that Judge Canel might rule on Ward's assertion of illness. The following morning O'Malley appeared in court. An assistant of Ward's also appeared and told the judge that Ward could not appear in court because he had become ill during the previous evening; that Mrs. Ward had called him the evening before to notify him that Ward would be unable to commence the trial on May 4; and that he did not know the exact nature of Ward's illness. Judge Canel continued the case until May 5, to find out what had happened to Ward.

During the afternoon of May 4, 1966, the judge held a discussion of the matter in chambers, at which meeting a former associate of Ward's—a Mr. Anthony—was told that some evidence of Ward's illness would have to be presented to the judge so that he could decide what to do with the case. The judge stated that he had spoken with Ward's personal physician—a Dr. Siegel—who had told him he had not seen Ward and did not intend to see him; that there was nothing wrong with him, as he had told Ward's wife the evening before; that she should give him a sedative and have him stay at home the next morning, then go back to work. The judge further stated that in a second telephone conversation the doctor again said he did not intend to see Ward, that there was nothing wrong with him.

On May 5, 1966, Attorney Anthony and Attorney Buchholz (who had referred the case to Ward for trial) appeared before Judge Canel to request a mistrial. Anthony, in support of the motion, said he had talked to Ward on May 4, at which time Ward told him he was trying to get Dr. Siegel to testify in court, but the doctor

454

was busy and could not appear that morning. Anthony further stated that Ward had advised him he had a thyroid condition for which he was taking a drug; that the condition, which he had had for years, increased his pulse rate and upset him, requiring sedative treatment.

Buchholz testified that he had known Ward for 35 years; that in his opinion Ward was a competent, experienced attorney with an outstanding reputation in the personal injury field. He stated he had talked with Ward during the afternoon of May 4, at which time Ward had seemed irrational and disturbed; that Ward had said he was ill and unable to proceed with the case. Buchholz had gone unannounced to Ward's home, where he found him in bed, literally shaking, pale, drawn, and considerably agitated.

Attorney Anthony offered to have Ward's secretary testify as to preparations which had been made, so as to set at rest any suggestion that Ward was unprepared to proceed with the trial. The secretary testified she had personal knowledge of Ward's preparation for the trial which included arrangements to have three doctors from Michael Reese Hospital testify, as well as two other witnesses.

The court then arranged to have a Dr. Brownstein examine Ward that same afternoon so he could report his findings. After an adjournment, court was reconvened on the afternoon of May 5, at which time the court stated that Dr. Brownstein had examined Ward and given an oral report to the court to the effect that Ward had a "rheumatic cardiac of long standing; that he had a goiter which is toxic; that Ward claimed to be nervous, tense, and he wanted to stay in bed 3 or 4 days; that the doctor had assured the Court that the trial of the case would not cause Ward's death or serious injury." The case was continued to May 6, 1966.

The following morning Attorney Ward appeared in court and stated that Dr. Brownstein had been served

with subpoena the previous evening; that the doctor, who had not appeared in response to the subpoena, had told Ward the court had misunderstood his report. Accordingly, Ward attempted to offer further proof which Judge Canel denied, and after Ward stated he was not "ready to go" that morning, Judge Canel dismissed the case for want of prosecution. A subsequent order of the court of September 9, 1966, denied a motion and petition filed by plaintiff, which motion and petition sought to have the court set aside its order of May 6 which had dismissed the suit for want of prosecution.

This appeal is prosecuted to reverse the lower court orders of May 6, 1966, dismissing the suit, and of September 9, 1966, denying the motion and petition to set aside the said order of dismissal, with directions to place the case back on the trial calendar for a trial on the merits.

OPINION.

▆ It would seem to be a matter of pure reasoning that if an attorney who has prepared a case for trial becomes ill and is unable to proceed with the trial, the court should grant him a continuance. In Jarvis v. Shacklock, 60 Ill 378, the court said at page 379:

> "Illness of counsel would certainly be a good cause for continuance where the court can see that a fair trial is likely to be prevented by such illness, and the party moving for a continuance has shown no unreasonable carelessness."

It has also been held in various cases from other jurisdictions that where an attorney is unexpectedly prevented by sickness from attending court, there is ample ground for postponing the trial. Turner v. Loomis, 146 Iowa 655, 125 NW 662; Pioneer Engineering Works, Inc. v. McConnell, 123 Mont 171, 212 P2d 641; and Two Republics Oil & Gas Co. v. Reiser (Tex), 247 SW 910.

In Ford v. Ford, 150 Fla 717, 8 So2d 495, the court reversed a dismissal of a suit by the trial court. The law-

yer's sister was seriously ill and he requested a continuance. The court cited and quoted from Courtney v. Central Trust Co., 112 Fla 298, 150 So 276, where it was stated that where a reason is presented to the court that "the rigid enforcement of rules of procedure would defeat the great object for which they were established, it is his duty to so relax them (when it can be done without injustice to any) as to make them subserve their true purpose which is to promote the true administration of justice."

When Attorney Ward appeared in court on May 6 he stated to the court that Dr. Brownstein had been served with subpoena and that the doctor had told him the court had misunderstood his report. The judge denied the offer of proof and refused to hear any evidence from Dr. Brownstein, and thereupon entered the written order he had prepared withdrawing a juror, declaring a mistrial, and dismissing the case for want of prosecution.

On May 19, 1966, Ward filed a verified petition asking that the order of dismissal of the suit be set aside. In the petition Ward alleged that he was suddenly taken ill on the evening of May 3, 1966, and that he was in bed for two days under sedation, except when he was driven to a physician appointed by the court for examination, and was physically unable to try the case on May 6, and that the case would take a week or ten days.

John J. O'Malley, attorney for defendants, filed a counteraffidavit on June 3, 1966, in which he stated that Ward had called him on May 3, stating he had "passed out" and would not be able to proceed with the trial the next morning. We find no place in the record where defense insisted the case be tried. On June 3, Ward filed a supplemental affidavit in support of his petition of May 19, in which he stated that the court had called the plaintiff and told her he could get her $15,000 in settlement. She told him she wanted $35,000, and the court said it was too much, that she would never get that from the

jury. The affidavit then described Ward's sickness, in which it was stated that Dr. Brownstein, the physician appointed by the court, had examined him, and told him he had a toxic thyroid condition and a mitral valve defect, with his heart beating so loudly that the doctor stated he could hear it before he used his stethoscope; that Ward had an enlarged heart, his blood pressure was above normal; that Dr. Brownstein would telephone the judge and advise him that his physical findings were compatible with Ward's symptoms and complaints; and that he advised Ward to go home, rest and take tranquilizers.

The affidavit further stated that when Buchholz, Ward's associate, telephoned Ward that Judge Canel had said Dr. Brownstein had told him there was nothing really wrong with Ward and that coming into court to resume the trial of the case would not cause Ward's death, Ward telephoned Dr. Brownstein to tell him what had been said by the judge; that the doctor told Ward the judge must have misunderstood him because he had not made that statement to the court.

The affidavit further stated that Ward had arranged to have a subpoena served on Dr. Brownstein to appear in court the following morning before Judge Canel; that the doctor was served but did not appear, and the judge said he had instructed the doctor not to come in and told him to ignore the subpoena. Attached to the supplemental affidavit was an affidavit of the plaintiff in which she stated that someone identifying himself as Judge Canel had telephoned her and told her he could get a $15,000 settlement for her.

On September 2, 1966, Ward filed the affidavit of Dr. Harry M. Siegel, his personal physician, who stated that he had received a call from Mrs. Ward on the evening of May 3, advising him that Ward had "blacked out" and was complaining that he felt chilled and weak all over; that he had advised Mrs. Ward to have her husband

remain in bed for several days and continue with the medication he had prescribed; that it was the doctor's opinion that Ward "was in no condition to engage in any form of litigation for a period of at least seven days."

On September 2, 1966, Ward also filed the affidavit of Bernard Buchholz who had referred the case to him. In that affidavit Buchholz stated that on May 5, 1966, at about 3:00 p. m., he appeared before Judge Canel at the judge's request, and was advised that the case would come to trial, regardless of Ward's absence; that he, Buchholz, tried to employ William Anthony to try the case for the plaintiff, but Anthony said he would be unable to try it. Buchholz then telephoned Ward, advising him what the court had said Dr. Brownstein told him concerning Ward's condition; Ward told Buchholz this was not according to Dr. Brownstein's report to him, and that he would call the doctor. Buchholz then received a call from Dr. Brownstein, who stated there must have been some mistake, that he would call the judge.

On September 7, 1966, Ward filed a petition asking that Judge Canel direct Dr. Brownstein to appear in open court so that he could be examined and cross-examined by respective counsel as to his findings. On the same day the court entered an order denying the request and granting leave to Ward to file the affidavits of Dr. Siegel and Buchholz. On September 9, 1966, Judge Canel entered an order denying the petition and motion of Ward to vacate the order of May 6, 1966, dismissing the case for want of prosecution. The order readopted all the findings in the opinion filed on August 5, 1966, and found that the affidavits of Dr. Siegel and Buchholz were filed without leave of court.

On August 5, 1966, Judge Canel filed a 17-page opinion in which he set forth his reasons for a dismissal of the case. He stated that at 9:30 a. m., on May 4, an office assistant of Ward's advised the court that counsel was unable to attend; that Mrs. Ward was upset and that

459

Ward had asked her to call and explain; that the assistant could not at that time advise the court further concerning the cause or duration of counsel's absence, nor was the plaintiff present in court. In the opinion the court said that at that juncture it would have been fully warranted in declaring a mistrial and dismissing the case for want of prosecution.

In the opinion Judge Canel also stated that he had talked with Dr. Siegel who said he had told Ward's wife "there was nothing wrong with him anyway, that he gets into these every time he gets distressed, and to give him a sedative and perhaps let him stay home the following morning . . . and then let him go back to work"; that Dr. Siegel had said he did not think it necessary to see Ward, and had repreated this in a second conversation with Judge Canel.

The judge stated further in the opinion that Anthony and Buchholz had appeared before the court and had made statements concerning the illness of Ward; that Buchholz had said Ward "appeared to be most irrational, and he appeared to be quite disturbed and stated that he was ill and was in bed, . . . that he was unable to proceed with this matter." Buchholz further described Ward's condition when he went to see him, telling the court that Ward "was most pale and withdrawn and appeared to be considerably agitated, and in fact, literally shaking; and in my opinion, . . . all I can say is that this man appeared to be totally unable to proceed with any kind of litigation." The court then told Buchholz that he had found that Ward always looked pale when he was in court.

The opinion also stated that Dr. Brownstein had examined Ward later that day and had given the court his opinion as to his physical condition, stating that he thought Ward should be permitted to stay in bed three or four days. The court said: *"The doctor assured me that the trial of the case by counsel would not cause his*

460

*death or cause serious injury, . . . .*" [Emphasis supplied.] The court stressed the fact that the obligation of counsel to proceed, expeditiously, to trial following the assignment of a case to a trial judge cannot be gainsaid, and cited numerous cases in support, about which it seems there can be no question. The opinion cited other cases, many of which are not in point, and also stated that in the opinion of the judge, the case was not complicated and counsel should have permitted Anthony to substitute for him.

Assuming that the court's memory of Dr. Brownstein's statement was accurate, it seems strange that he should stress the fact that the doctor had said an appearance in court by Ward would not cause death or any serious injury. In no case or theory of law presented to us has such a requirement been made in order to obtain a continuance.

In his opinion the judge also seeks to explain his refusal to permit Dr. Brownstein to testify. The explanation is that the doctor had examined Ward as a courtesy to the court; however, he does point out that in his supplemental affidavit Ward questioned the accuracy of the court's recollection, but he does not submit any affidavit or report in support of that. It would seem that is answered by the fact that counsel desired to have Dr. Brownstein testify in open court.

Among other cases cited in the opinion is Gray v. Gray, 6 Ill App2d 571, 128 NE2d 602, in which the court states that when a case has been sent to a judge for trial he must not entertain any further motions for continuance except perhaps for "some extraordinary circumstance arising between the time the case was sent down for trial and the time the trial judge proceeded to hear it." It would seem that even though the matter had not gone to the stage where the evidence was presented to the court, there was a question raised which would require further investigation. In accordance with the holding in

461

Condon v. Brockway, 157 Ill 90, 41 NE 634, the trial court's discretion and its exercise should not be interfered with by the appellate tribunals unless there has been a manifest abuse of such discretion.

In the opinion the court states that "Mr. Anthony is well-qualified to try the case and appeared ready, willing and able to do so." As a matter of fact, Mr. Anthony had stated to Mr. Buchholz that he would be unable to try the case.

The determination of the trial court was made almost entirely upon the information which Judge Canel said he received from Dr. Brownstein; however, in People v. Wallenberg, 24 Ill2d 350, the court said at page 354:

> "This court has held that the deliberations of the trial judge are limited to the record made before him during the course of the trial. A determination made by the trial judge based upon a private investigation by the court or based upon private knowledge of the court, untested by cross-examination, or any of the rules of evidence constitutes a denial of due process of law."

Also see People v. Thunberg, 412 Ill 565, 107 NE2d 843. In People v. Rivers, 410 Ill 410, 102 NE2d 303, the court said at pages 416 and 419:

> "Any private investigation by the court, either during the trial of the cause or while the motion for new trial is pending, constitutes a denial to the defendant of the constitutional guarantee of due process of law.
>
> " . . .
>
> "However innocently any private investigation may have been made, for whatever purpose, and regardless of its results, the defendants' constitutional

right to have everything considered against them produced in open court has been violated."

In the case before us the trial court abused its discretion in withdrawing the jury and dismissing the case. The judgment of the Circuit Court is reversed and the cause is remanded for trial.

Reversed and remanded.

DRUCKER, P. J. and ENGLISH, J., concur.