Homer A. BONHIVER, as Receiver American Allied Insurance Company and Allied Realty of St. Paul, Inc., a Minnesota corporation, Plaintiff-Appellee,

v.

ROTENBERG, SCHWARTZMAN & RICHARDS, a partnership, Mark L. Schwartzman, individually, and Jerome Rotenberg, individually, Defendants-Appellants.

No. 71-1258.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1971.

Decided May 12, 1972.

Richard E. Mueller, Lord, Bissell & Brook, Chicago, Ill., for defendants-appellants; Don W. Fowler, Chicago, Ill., of counsel.

James B. O'Shaughnessy, Robert J. Vollen, Chicago, Ill., for plaintiff-appellee; Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., of counsel.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and GRANT, District Judge.*

SWYGERT, Chief Judge.

This is an appeal from a judgment for plaintiff following a bench trial in an

* Chief Distirct Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

action for damages sounding in negligence brought by the receiver of a defunct insurance company against the attorneys who served as its general counsel. Jurisdiction was founded on diversity of citizenship. The district court found that defendants were liable to plaintiff in the amount of $28,672.19, apparently on the theory that defendants were guilty of "malpractice and conflict of interest misconduct." We reverse.

The facts pertinent to this appeal are as follows. American Allied Insurance Company was organized pursuant to the laws of Minnesota with its principal place of business also being in Minnesota. The sole shareholder of American Allied at all times pertinent hereto was Philip Kitzer, Sr., who was also its president and a corporate director. Philip Kitzer, Jr. was vice president, treasurer and a corporate director of American Allied. The law firm of Rotenberg, Schwartzman & Richards was general counsel to American Allied, and the Kitzers were also clients of the law firm individually. Kitzer, Sr. purchased a building at 275 East Fourth Street, St. Paul, Minnesota, on September 25, 1963 from Herman Griesdorf, giving in partial payment therefor three promissory notes in the amount of $50,000 each of which were executed by the Kitzers, Sr. and Jr., and their wives. Thereafter, the building and land were conveyed by Kitzer, Sr. to Allied Realty of St. Paul, Inc., a wholly-owned subsidiary of American Allied, in return for $250,000 par value stock of Allied Realty.

Griesdorf, the seller of the building, gave one of the Kitzer notes as collateral security on a loan to him by Colonial Bank and Trust Company of Chicago. After Griesdorf defaulted on the note, Colonial Bank obtained a judgment in the amount of $46,703.56 against the Kitzers and their wives on the collateral note. The Kitzers retained James Daniels and Rotenberg, Schwartzman & Richards as counsel to vacate the Colonial Bank judgment. After negotiation, agreement was reached to settle the judgment with Colonial Bank for the amount owed by Griesdorf of $31,997.49.

Obtaining the funds to purchase the judgment was arranged by Kitzer, Jr. with Max Gary, president of The Upper Midwest Agency, Inc., an agent in Minnesota for the sale of American Allied insurance policies. Gary agreed with Kitzer, Jr. that he and Upper Midwest would loan the Kitzers, individually, $31,997.49 in return for the assignment to him and Upper Midwest of the $46,703.56 Colonial Bank judgment as security for the loan. In addition to the assignment, Kitzer, Jr. agreed to give Gary a letter in which Kitzer, Jr., as American Allied's vice president, would authorize Upper Midwest to apply in payment of the loan any premium funds held by it which were due American Allied in the event that the loan was not paid within sixty days from the date of the letter.

On October 22, 1964 Gary brought with him to Chicago a check drawn on the Upper Midwest Agency account in the amount of $31,997.49 dated October 21, 1964 which he gave to Colonial Bank, and, in return, he received the assignment of the judgment. On the same day, Kitzer, Jr. gave defendant Schwartzman a written draft of a letter drawn for Schwartzman's signature which provided that, if the loan was not paid by the Kitzers within sixty days of the letter's date, Upper Midwest could use American Allied premium funds to repay the loan. Kitzer, Jr. requested of Schwartzman that he put the draft letter in final form. After several minor revisions by Schwartzman, he sent the final draft bearing his signature under date of October 27, 1964 to Norman Cohen, an attorney in Minneapolis who was counsel for Upper Midwest.

The arrangement between American Allied and Upper Midwest with regard to the remittance of premium funds for American Allied policies sold by Upper Midwest was that the net premium (gross premium less commission) was

remitted approximately at the end of the second month following sale of the policy. Upper Midwest would notify American Allied of the sale of each policy contemporaneously with the sale, and after the end of each month American Allied would bill Upper Midwest for the net premium due. Customarily, therefore, the premium due American Allied for August policy sales would be remitted at the end of October. During the post-sale, pre-remittance interim, the amounts collected were premium trust funds, although Upper Midwest simply commingled such funds in the agency's general account.

The Kitzers never repaid the loan of $31,997.49. When American Allied collapsed and the receiver filed suit against Upper Midwest for a large amount claimed as premiums due, Gary claimed that $28,672.19 of the $31,997.49 loan check to Colonial Bank dated October 21, 1964 and drawn on the Upper Midwest account represented the American Allied premium trust funds for policies sold in August. Ultimately, all other monthly premium payments owed by Upper Midwest to American Allied were shown to have been remitted for the period June 1964 through May 1965 except those for August 1964.

Finally, it is apparent that the district court found that the August 1964 premium funds were part of the October 21 Upper Midwest check to Colonial Bank by the court's statement: "It is true that Gary and Upper Midwest apparently did not wait the sixty days before recapturing from American Allied all but $3,000 of the money they lent the Kitzers."

### I

The district court did not find that Schwartzman's conduct was a cause in fact of the loss to American Allied of the $28,672.19 in August premiums due it from Upper Midwest. Indeed, the language of the district court's opinion seemingly foreswears the necessity of finding causation in fact, for the district judge, after having noted that the Schwartzman letter authorized diverting premium funds under conditions which were not met, said: "That an improper authorization was improperly used is hardly a defense to the initial impropriety of its issuance." While the foregoing statement may be true as stated, it assumes that liability in this case was determined by the impropriety of Schwartzman's conduct and not by the usual standards of proof required in actions based on negligence, including the requirement of proof that the negligent conduct caused the injury in fact. As Professors Harper and James stated it:

> Negligence is not a ground of liability unless it causes injury or damage to some interest which the law recognizes and protects. Moreover, it does not make a defendant liable for injury or damage that is not a consequence of the negligence. The establishment of the requisite causal connection is therefore an element of a plaintiff's cause of action for negligence, to be pleaded and proved by him. 2 F. Harper & F. James, The Law of Torts § 20.1 at p. 1108 (1956).

Here, there was not the merest suggestion of proof of causation. Indeed, all of the evidence tended to show that Gary had already converted the premium trust funds due American Allied and misapplied them to satisfy the Colonial Bank judgment before the October 27 letter was redrafted by Schwartzman, in fact, before Schwartzman had ever seen the draft of the letter given him by Kitzer, Jr. or heard of the existence of the letter or of the oral agreement between Kitzer, Jr. and Gary that such a letter would be sent.

■ The district court said in justification of its finding of liability: "[S]ince Upper Midwest and Gary remitted subsequent premium trust funds through May 1965, if they had not substantially reimbursed themselves by withholding the August 1964 premiums normally payable in October, it is reasonable to assume that subsequent payments would have been withheld. Either way American Allied would, as it

did, have suffered a loss of $28,672.19 or more." Those statements, we believe, were the predicate for the district court's finding of liability and demonstrate that the fact of causation was not proved, but rather was accepted on impermissible speculation. Professor Prosser says: "An essential element of the plaintiff's cause of action for negligence, or for that matter for any other tort, is that there be some reasonable connection between the act or omission of the defendant and *the damage which the plaintiff has suffered.*" W. Prosser, Handbook of the Law of Torts 236 (4th ed. 1971) (emphasis added). What damage might have occurred under other circumstances is irrelevant to the issue of whether Schwartzman's letter caused the damage that did occur before it was written or even contemplated, so far as we know, by him. That question was never answered by any proof.

## II

■ The district court's finding that Schwartzman was liable to American Allied for malpractice was also erroneous because the plaintiff failed to offer expert testimony to show that Schwartzman's conduct fell below the standards of professional conduct applicable to attorneys. As the Illinois Appellate Court stated in Olson v. North, 276 Ill.App. 457, 473 (2d Dist. 1934):

> When a person adopts the profession of law, if he assumes to exercise the duties in behalf of another for hire and reward, he must be held to employ in his undertaking a reasonable degree of care and skill. If injury result to the client from the want of such a degree of reasonable care and skill, he must respond in damages to the extent of the injuries sustained. It is the duty of an attorney to bring to the conduct of his client's business the ordinary legal knowledge and skill common to members of the legal profession, to act toward his client with the most scrupulous good faith and fidelity, and to exercise in the course of his employment that reasonable care

and diligence which is usually exercised by lawyers.

The *Olson* case held that "the rules of evidence governing the trial of cases for malpractice against a lawyer are the same as those against a doctor or dentist," 276 Ill.App. at 476, and that the absence of expert testimony, which is required to establish the appropriate professional standard of conduct, compelled dismissal of the negligence count therein. 276 Ill.App. at 476–477; Dorf v. Relles, 355 F.2d 488, 492–493 (7th Cir. 1966). In medical malpractice suits, the Illinois Appellate Court has held that expert testimony establishing deviation from the standard is required unless "the negligence is so grossly apparent or the treatment is of such a common occurrence that a layman would have no difficulty in appraising it." Graham v. St. Luke's Hosp., 46 Ill.App.2d 147, 158, 196 N.E.2d 355, 360 (1st Dist. 1964); Sanders v. Frost, 112 Ill.App.2d 234, 240–241, 251 N.E.2d 105, 107–108 (5th Dist. 1969); Dimitrijevic v. Chicago Wesley Memorial Hosp., 92 Ill.App.2d 251, 257–260, 236 N.E.2d 309, 312–314 (1st Dist. 1968). This is clearly not a case of negligence so grossly apparent as to warrant submission to the finder of fact without expert testimony to establish the applicable standard of professional conduct.

■■ Plaintiff asserts, without citing any authority therefor, that the requirement of expert testimony should not apply to the instant case because it was tried to the court without a jury and judges must be taken as being sufficiently knowledgeable with regard to the applicable standards of legal practice to determine whether Schwartzman's conduct was negligent. Although the argument has superficial appeal, it ignores the applicable case law with regard to whether judges may decide lawsuits based on their independent knowledge of facts. The Illinois Supreme Court stated in People v. Wallenberg, 24 Ill.2d 350, 354, 181 N.E.2d 143, 145 (1962): "A determination made by the trial judge based upon a private investigation by

the court or based upon private knowledge of the court, untested by cross-examination, or any of the rules of evidence constitutes a denial of due process of law." That rule applies to civil cases as well as to criminal cases, Nowaczyk v. Welch, 106 Ill.App.2d 453, 462, 245 N.E.2d 894, 899 (1st Dist. 1969), and is so clearly substantive as to be applicable under Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See Cohen v. Beneficial Loan Corp., 337 U.S. 541, 556, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Guaranty Trust Co. v. York, 326 U.S. 99, 108–109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Accordingly, the district court should have entered judgment for the defendant at the close of the plaintiff's evidence for failure to prove the applicable standard of conduct as required by Illinois law and for failure to prove that defendant's negligence was a cause in fact of the injury claimed.

The judgment of the district court is reversed.