
# IN THE SUPREME COURT OF GUAM

**CYNTHIA V. ECUBE, in her capacity as Special Administrator
of the Estate of Radhi P. Hemlani and ISHWAR P. HEMLANI and
VASUDEV B. HEMLANI, Executors of the Estate of P.D. Hemlani,**
Plaintiffs-Appellants/Cross-Appellees,

**v.**

**RK INCORPORATION,**
Defendant-Appellee/Cross-Appellant.

Supreme Court Case No. CVA19-006
Superior Court Case No. CV0525-11

## OPINION

### Cite as: 2021 Guam 2

Appeal from the Superior Court of Guam
Argued and submitted on October 21, 2019
Hagåtña, Guam

Appearing for Plaintiffs-Appellants/
Cross-Appellees:
William M. Fitzgerald, *Esq.*
Law Offices of William M. Fitzgerald
259 Martyr St., Ste. 100
Hagåtña, GU 96910

Appearing for Defendant-Appellee/
Cross-Appellant:
Thomas M. Tarpley, Jr., *Esq.*
Thomas McKee Tarpley Law Firm
137 Murray Blvd., Ste. 202
Hagåtña, GU 96910

**E-Received**
3/30/2021 10:37:22 AM

BEFORE: KATHERINE A. MARAMAN, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and ROBERT J. TORRES, Associate Justice.[1]

**MARAMAN, C.J.:**

[1]     This case comes to us on appeal after the trial court found Plaintiffs-Appellants/Cross-Appellees Cynthia V. Ecube, in her capacity as special administrator of the estate of Radhi P. Hemlani ("Radhi"), and Ishwar P. Hemlani and Vasudev B. Hemlani, executors of the estate of P.D. Hemlani (collectively, "the Estates"), are not owed the $120,000 on the promissory note that Defendant-Appellee/Cross-Appellant RK Incorporation ("RK") had executed in favor of P.D. Hemlani ("P.D."). We find the trial court erred when it concluded that after relying on improperly admitted summary evidence and personal expertise. We reverse and remand for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Promissory Note

[2]     RK is a family-owned corporation, which Kishore Hemlani ("Kishore") owns with his wife and daughter as shareholders. P.D. was a Guam businessman related to Kishore. When P.D. died in 2004, his wife, Radhi, became the executrix of his estate until her death in 2013.

[3]     Kishore alleges the transactions underpinning this case began in 1997, when P.D. extended loans to RK amounting to $600,000. Transcript ("Tr.") at 5 (Bench Trial, Sept. 15, 2017); Appellee's Br. at 1 (May 28, 2019). The record contains no written evidence of these loans. *See* Record on Appeal ("RA"), tab 127 at 2 (Finds. Fact & Concl. L., Apr. 24, 2018). According to RK, between 1998 and 2002, it paid down the balance on those loans to $120,000—and on September 18, 2002, RK signed a promissory note promising to pay P.D. the remaining $120,000

---

[1] The signatures in this opinion reflect the titles of the justices when this matter was argued and submitted.

at 18% interest per annum, to be paid in full by September 20, 2003. The trial court found that, from October 2002 to October 2007, RK made 60 payments of $1,200 to P.D. and Radhi on the loan, totaling $72,000.

[4]       RK's last payment on the note was on October 1, 2007. On March 24, 2011, Radhi filed a complaint on the note, seeking judgment for the $120,000 as principal, along with interest from November 1, 2007, to March 1, 2011, at an annual rate of 12%.[2] In its answer, RK asserted several affirmative defenses and counterclaims,[3] including a claim for $948,940, which RK alleged it had overpaid on top of its full payment of the initial $600,000 loan. The parties also dispute whether Radhi had rescinded the note.

## B. The Bench Trial

[5]       The court held a bench trial. During the plaintiff's case, Ishwar Hemlani ("Don")—one of Radhi's executors—testified to the note's validity, claiming RK still owed the Estates the note's principal and interest. Don and Jeffrey Cook, Radhi's attorney, testified they were not aware Radhi had rescinded the promissory note.

[6]       Kishore testified on behalf of the defense. Kishore said that after the promissory note's signing in September 2002, P.D. agreed to extend the term of the loan and reduce its interest rate to 12%, retroactive to the beginning of the $600,000 loan. Kishore also testified RK stopped paying in October 2007 because Radhi rescinded the note and told Kishore he no longer needed to

---

[2] The Estates calculated interest at $55,267.20 and seek $175,267.20 in sum from its complaint, claiming interest from March 1, 2011, until the date of entry of judgment.

[3] RK asserted the following affirmative defenses: "[p]laintiff is no longer the real party in interest;" statute of limitations; estoppel; waiver; and equitable recoupment. RA, tab 35 at 3 (Am. Answer & Countercls., July 10, 2014). In addition to its counterclaim for the $948,940 plus interest, RK also counterclaimed for slander of title and for the return and cancellation of its mortgage that secured the loan. RK later dropped its slander-of-title counterclaim during the bench trial.

pay.  Kishore, however, admitted he had nothing in writing showing the retroactive application of the 12% interest rate or the note's rescission.

[7]    Kishore further alleged RK not only had paid the note but had also overpaid it through a series of payments to P.D. in checks and cash.[4]  Kishore submitted into evidence three spreadsheets—Exhibits B, F, and H—which Kishore claimed recorded the checks with corresponding check numbers, and which served as the only record of the cash payments.

### 1.  Exhibit B

[8]    Exhibit B was a five-page spreadsheet RK offered into evidence with columns showing, respectively: dates; check numbers; amounts paid by check; and amounts paid by cash, beginning on November 7, 1997, and ending on October 1, 2007.  The entries dated October 21, 2002, until October 1, 2007, showed a series of checks corresponding to payments of $1,200.  Kishore claimed the spreadsheet listed all the payments RK made towards the $600,000 loan in checks and cash.  The spreadsheet bore no other identifiable markings or notations except for the figures in the columns.  Kishore claimed he had original copies of the checks, but P.D. did not provide receipts for the cash payments indicated on the spreadsheet.  The court admitted Exhibit B as a summary of Kishore's testimony.  *See* Tr. at 113 (Bench Trial) ("The court will admit it as a summary of his testimony, provided the testimony is consistent with it . . . .").

### 2.  Exhibit F

[9]    Exhibit F was a four-page spreadsheet with columns respectively showing: dates; check numbers; "interest" amounts; "payment" amounts; and a running balance from November 1, 1997, at $600,000, to September 18, 2002, at $119,899.11.  RA, Def. RK Inc.'s Trial Exs. at Ex. F (Sept. 12, 2017).  Kishore testified Exhibit F presented his calculation of how RK's payments reduced

---

[4] Kishore did not pursue a claim against P.D.'s estate to recover the alleged overpayment.

the loan from the initial $600,000 to the $120,000 balance on the note. As with Exhibit B, this exhibit bore no other identifiable markings or notations except for the figures in the columns, and Kishore furnished no receipts from P.D. corroborating his payments, or the initial $600,000. The court also admitted Exhibit F as summary evidence. Tr. at 131 (Bench Trial) ("We'll admit it as a summary, again, of his testimony.").

### 3. Exhibit H

[10]  Exhibit H was a spreadsheet that appeared similar to Exhibit F, containing five filled columns respectively showing dates, check numbers, interest amounts, payment amounts, and a running balance. The exhibit ran from an initial balance of $600,000 on the first entry to an end balance of $282.83. Unlike the other spreadsheets, Exhibit H showed a sixth column bearing Kishore's calculations based on retroactive application of the 12% interest rate from the beginning of the loan. As with Exhibits B and F, Exhibit H contained no other identifiable markings or notations except for the figures in the columns, and RK furnished no other records or receipts corroborating the spreadsheet's values.

## C. Court's Findings of Fact and Conclusions of Law

[11]  The court issued its findings on April 24, 2018. In reaching its conclusion, the court relied on *Hemlani v. Hemlani*, 2015 Guam 16, to determine the Estates' elements, as holder or payee of the promissory note, must establish to recover on the note. The court found the fourth factor was not satisfied—whether a balance was due and owing on the note—because P.D. miscalculated that balance, which the court discovered after it "conducted its own calculations." RA, tab 127 at 5 (Finds. Fact & Concl. L.). Thus, the court saw no need to determine whether the oral modification of the interest rate from 18% to 12% applied prospectively from the note onward, or retroactively from the beginning of the loan. It found for RK and ordered the Estates to return the promissory note and mortgage. On RK's overpayment counterclaim, the court concluded the claim was barred

since RK failed to assert its claim against P.D.'s estate within 60 calendar days after the first publication of notice to creditors, as 15 GCA § 2521(a) requires.

[12]    The Estates timely appealed the trial court's final judgment, and RK filed a timely cross-appeal of the same judgment.

## II.  JURISDICTION

[13]    This court has jurisdiction over an appeal from a final judgment of the Superior Court.  48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 116-259 (2020)); 7 GCA §§ 3107, 3108(a) (2005).

## III.  STANDARD OF REVIEW

[14]    "Following a bench trial, [we review] the trial court's findings of fact, whether based on oral or documentary evidence," for clear error.  *See Yoshida v. Guam Transp. & Warehouse, Inc.*, 2013 Guam 5 ¶ 20 (citing *Town House Dep't Stores, Inc. v. Ahn*, 2000 Guam 32 ¶ 13).  We review the trial court's conclusions of law *de novo*.  *Id.*

[15]    These standards of review also apply to our interpretation of the promissory note underlying this case.  When we review a potentially ambiguous contract like a promissory note, "[t]he initial determination of ambiguity is reviewed *de novo*, but 'the clearly erroneous standard comes into play only after the trial court's finding of ambiguity is upheld.'"  *Ramiro v. White*, 2016 Guam 6 ¶ 16 (quoting *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999)).

[16]    Meanwhile, "[w]e review evidentiary rulings for an abuse of discretion."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cyfred, Ltd.*, 2015 Guam 7 ¶ 31 (citing *People v. Castro*, 2013 Guam 20 ¶ 20; *People v. Mallo*, 2008 Guam 23 ¶ 12).  That review also operates under a clear error standard:

> In the context of an evidentiary ruling, abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made regarding

admission of evidence. . . .  [I]n order to reverse the trial court, we must first have a definite and firm conviction the trial court, after weighing relevant factors, committed clear error of judgment in its conclusion.

*Id.* (first quoting *People v. Hall*, 2004 Guam 12 ¶ 34; and then quoting *People v. Quintanilla*, 2001 Guam 12 ¶ 9).

## IV.  ANALYSIS

### A.  The Trial Court Clearly Erred When It Relied on Kishore's Spreadsheets to Determine There Was No Balance Due and Owing on the Note

#### 1.  Extrinsic evidence was available to determine whether a balance was due and owing on the note

[17]     We first decide whether the trial court correctly admitted extrinsic evidence connected to the note, or whether the court should have limited its analysis to the note's four corners.  We consider this question *de novo*.  *See Leong v. Jun Hua Deng*, 2002 Guam 2 ¶ 16 ("Whether parol evidence was properly admitted is a conclusion of law.").

[18]     The Estates argue the trial court erred in looking at extrinsic evidence because the note was unambiguous: the note states RK owes $120,000, with interest assessed at 18% per annum. Appellant's Br. at 9 (Apr. 30, 2019).  RK is silent on this issue, maintaining generally that the case concerns only questions of fact requiring the clearly erroneous standard.  Appellee's Br. at 1.  We disagree with the Estates and find the trial court correctly decided extrinsic evidence was available to determine whether a balance was due and owing on the note.

[19]     "Promissory notes are negotiable instruments which are governed . . . by Article 3 of the Uniform Commercial Code ('UCC')."  *Hemlani*, 2015 Guam 16 ¶ 14 (alteration in original) (quoting *DCM Ltd. P'ship v. Wang*, 555 F. Supp. 2d 808, 813 (E.D. Mich. 2008)).  And "under the UCC, '[a] promissory note is a form of contract; therefore, it must be construed under general contract principles.'"  *Id.* ¶ 28 (alteration in original) (quoting *Bockman v. WCH, L.L.C.*, 943 So. 2d 789, 795 (Ala. 2006)).  Guam adheres to the "traditional approach" when interpreting

ambiguities in contract terms, unlike the "modern approach" in jurisdictions like California. *See Wasson v. Berg*, 2007 Guam 16 ¶¶ 16-17. Under Guam's traditional approach, "extrinsic evidence is inadmissible to interpret, vary or add to the terms of an unambiguous integrated written instrument." *Id.* ¶ 11 (quoting *Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 568 (9th Cir. 1988)).

[20] The Estates are correct: the note is unambiguous on its face, and had the parties disputed the note's terms, the trial court needed not look at extrinsic evidence to interpret those terms. But the court made it clear the dispute it considered turned on the fourth element of the *Hemlani* test—whether a balance was due and owing on the note.[5] *See* RA, tab 127 at 3 (Finds. Fact & Concl. L.). And a trial court may consider extrinsic evidence to determine the elements of that test. *See, e.g.*, *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 324 (Tex. App. 2011) (analyzing affidavits and statements of payments summarizing principal payments required and payments made in deciding whether plaintiff met balance "due and owing" element when collecting on promissory note). Under *Hemlani*, the court needed to determine that balance on the note to find whether the Estates could recover—and neither the Estates nor RK could have proven their claim or counterclaims unless the court looked at extrinsic evidence to determine whether RK had discharged the note or still owed on it. The four corners of the note, after all, would not reveal whether the note already had been paid.

---

[5] The trial court explained:

> The Supreme Court of Guam has provided a four-prong test to guide courts in actions stemming from a promissory note. In order to recover on a promissory note "the holder or payee [must] establish that (1) there is a note; (2) he is the legal owner and holder of the note; (3) the defendant is the maker of the note; and (4) a certain balance is due and owing on the note." The parties agree that the first three elements of the test are satisfied. . . . Additionally, P.D., and now his estate, is the legal owner and holder of the note. Further, RK admitted at trial that RK's Vice President signed the note in 2002. The only factor in dispute is the final factor—whether a certain balance is due and owing on the note.

RA, tab 127 at 4 (Finds. Fact & Concl. L.) (alteration in original) (quoting *Hemlani*, 2015 Guam 16 ¶ 14).

*Ecube ex rel. Estate of Hemlani v. RK Inc.*, 2021 Guam 2, Opinion

Page 9 of 15

**[21]**   We find no clear error in the court's decision to consider extrinsic evidence when determining whether a balance was due on the note.

> **2. Even if the court could admit extrinsic evidence to determine the balance on the note, the court clearly erred when it relied on RK's spreadsheet exhibits to establish that balance**

**[22]**   While principles of contract interpretation did not bar RK's extrinsic evidence for determining the balance owed on the note, the trial court clearly erred when it relied on Exhibits B, F, and H to determine the note's balance without properly ensuring those spreadsheets' reliability and accuracy.   Those spreadsheets were summaries for which RK had not laid a proper foundation.   Alternately, they were hearsay, not falling under any exception.

### a. Kishore's spreadsheets were inadmissible summaries

**[23]**   The court admitted Exhibits B and F under the summary evidence rule and allowed Kishore to testify as to the contents of all three exhibits.   The Estates argue the trial court improperly admitted those spreadsheets without regard to the summary evidence rule's requirements.   *See* Appellant's Br. at 20-22.   We agree with the Estates.

**[24]**   Guam's "summary evidence rule" provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.   The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place.   The court may order that they be produced in court.

Guam R. Evid. 1006.   We look to cases interpreting that rule's federal counterpart for persuasive authority.   *See id.* (citing its source as Rule 1006 of the Federal Rules of Evidence).

**[25]**   "The purpose of the [summary evidence] rule is to allow the use of summaries when the documents are unmanageable or when the summaries would be useful to the judge and jury." *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011) (quoting *Davis & Cox v. Summa*

*Corp.*, 751 F.2d 1507, 1516 (9th Cir. 1985), *superseded by statute*, 28 U.S.C. § 1961, *as recognized in Northrop Corp. v. Triad Int'l Mktg. S.A.*, 842 F.2d 1154, 1156 (9th Cir. 1988) (per curiam)). Because a summary itself is not firsthand evidence—rather, it aggregates evidence too voluminous for the court to inspect individually—"[a] proponent of summary evidence must establish that the underlying materials upon which the summary is based (1) are admissible in evidence and (2) were made available to the opposing party for inspection." *Id.* The underlying materials "need not themselves be admitted into evidence," *id.* (citing *United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988)), but the availability requirement is "essential," *id.* at 1131. The availability requirement ensures the opposing party has "an opportunity to verify the reliability and accuracy of the summary prior to trial." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261 (9th Cir. 1984).[6]

[26]    The trial court clearly erred when it failed to determine whether the materials underlying RK's spreadsheets were admissible evidence provided to the Estates for inspection. Kishore testified he had "original copies" of records reflected in the summary, but the court did not inquire into those records' admissibility, or whether they had been furnished to the Estates. *See* Tr. at 108 (Bench Trial). The court clearly erred in admitting those exhibits under Guam Rule of Evidence 1006 without first establishing that rule's requirements.

---

[6] Federal courts have recognized other limitations with the use of summary evidence, for example, with regards to jury trials:

> "[T]he summary should be accompanied by a limiting instruction which informs the jury of the summary's purpose and that it does not constitute evidence." *United States v. Vasilakos*, 508 F.3d 401, 412 (6th Cir. 2007). Because summary evidence poses risks that "[t]he jury might rely upon the alleged facts in the summary as if these facts had already been proved," that the jury will use the summary "as a substitute for assessing the credibility of witnesses," or that the summary might "emphasiz[e] too much certain portions of [a party's] case," district courts are to provide juries a limiting instruction *whenever* summary evidence is presented. *United States v. Scales*, 594 F.2d 558, 564 (6th Cir. 1979).

*United States v. Bailey*, 973 F.3d 548, 567–68 (6th Cir. 2020) (first, second, and third alterations in original).

### b. The court clearly erred when it admitted Exhibits B and F over the Estates' hearsay objections

[27]     The trial court also clearly erred in rejecting the Estates' hearsay objection to Exhibits B and F.  *See* Tr. at 113, 131 (Bench Trial).  The court impliedly overruled those objections by admitting the exhibits as summaries.  *Id.*; *see, e.g.*, *Martin v. Funtime, Inc.*, 963 F.2d 110, 116 (6th Cir. 1992) (hearsay problem regarding summary evidence is satisfied by concluding that the underlying records themselves are admissible).  The spreadsheets, however, were hearsay saved by no recognized exceptions.

[28]     Hearsay statements are those "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Guam R. Evid. 801(c).  "A hearsay statement is not admissible as evidence 'unless it falls into a known exception.'"  *People v. Tedtaotao*, 2016 Guam 9 ¶ 19 (quoting *J.J. Moving Servs., Inc. v. Sanko Bussan (Guam) Co.*, 1998 Guam 19 ¶ 32); *see also* Guam R. Evid. 802.  Exhibits B, F, and H were hearsay because RK entered them to prove that the amounts in the spreadsheets were the actual amounts RK claims it owed and paid P.D.  And unauthenticated documents, even when attached to an affidavit, are inadmissible hearsay.  *Morioka v. I & F Corp.*, DCA No. CV. 89-00019A, 1989 WL 265039, at *6 (D. Guam. App. Div. Sept. 26, 1989).  Exhibits B, F, and H do not fall under one of our recognized hearsay exceptions.  The trial court made no finding that Exhibits B and F were excepted from hearsay as records of regularly conducted business activity.  *See* Guam R. Evid. 803(6).  Nor were the exhibits established under other exceptions—for example, as recorded recollections under Guam Rule of Evidence 803(5) or under the "catchall" exception under Guam Rule of Evidence 803(24).

[29]     Since Kishore's spreadsheets were improper summaries and unexcepted hearsay, the court clearly erred by relying on them to reach its findings.  *Cf. Petion v. State*, 48 So. 3d 726, 737 (Fla.

2010) (appellate court cannot presume trial court disregarded inadmissible evidence that trial court had specifically admitted as proper).[7]

### c. RK's untimely opposition

[30]    During oral arguments, RK urged this court to not review for error the trial court's admission of Exhibits B and F as summary evidence.  According to RK, the Estates failed to preserve that objection, since during trial, the Estates objected to the spreadsheets' admission only as hearsay and not as improper summaries.  But we will not entertain that new issue, which RK raised for the first time only during oral arguments and not in any of its briefs.  *See People v. Roberson*, 2017 Guam 18 ¶ 10 ("This court has held that an appellant's failure to develop his argument in his brief results in an abandonment of the issue for purposes of appeal.").

### 3. The trial court clearly erred when it relied on its personal expertise to calculate the balance due and owing on the note

[31]    The Estates argue the trial court erred when it relied on its personal knowledge and expertise to conclude that no balance was due and owing on the note.  *See* Appellant's Br. at 16-20.  The court explained it reached its findings after "*conduct[ing] its own calculations* based on the payments the Court [found] were made by RK to P.D." RA, tab 127 at 5 (Finds. Fact & Concl. L.) (emphasis added).  We agree with the Estates.

[32]    The trial court reached beyond simple arithmetic when it relied on its own complex calculations and assumptions to reach its conclusions.[8]  We caution judges against allowing

---

[7] We clarify that the trial court's error was in admitting RK's exhibits as valid summaries over the other party's hearsay objection, without ensuring those spreadsheets meet the summary rule's requirements.  *See Rizk*, 660 F.3d at 1130.  Our findings do not restrict RK from establishing, upon remand, that the summary rule or a hearsay exception applies to the exhibits.

[8] The court made the following calculations and/or assumptions: (1) The court assumed the loan did not contemplate compound interest, and so the court applied simple interest at the end of each year, RA, tab 127 at 5 (Finds. Fact & Concl. L.); (2) the court assumed the 18% interest should not be applied to the $600,000 initial balance, and instead should only apply per annum to the remaining balance at the time of payment, *id.* at 5 n.2; and (3) the court assumed the 18% per annum interest should be applied on a quarterly basis at 4.5% per quarter, *id.* at 6 n.3.

expertise from outside the courtroom to inform the court's conclusions on an issue, since any such input would be untested by briefing or cross-examination. *See Price Bros. Co. v. Phila. Gear Corp.*, 649 F.2d 416, 419 (6th Cir. 1981) ("A judge presiding at a bench trial may not directly or indirectly, through his law clerk or by any other means, conduct an investigation outside the record and use the results of that investigation in determining the facts of a case."); *Laurance v. Laurance*, 258 P.2d 784, 787 (Or. 1953) ("No judge . . . is at liberty to take into account personal knowledge which he possesses when he decides an issue submitted to him by the parties."); *Vaughn v. Shelby Williams of Tenn., Inc.*, 813 S.W.2d 132, 133 (Tenn. 1991) ("There is ample authority for the proposition that a judge is not to use from the bench, under the guise of judicial knowledge, that which he knows only as an individual observer outside of the judicial proceedings." (citing 9 Wigmore, *Evidence* § 2569 at 723 (1981))).[9]

[33]    The trial court's calculations, when done internally away from the record, also precludes us from looking into whether those calculations were amply supported by evidence. *See Vaughn*, 813 S.W.2d at 134 ("[W]hen a judge becomes a source of evidence, appellate courts are put in an awkward position in that the character of the evidence obtained through private inquiry or observation, as well as its probative value, is not shown in the record, making an evaluation of the information on appeal difficult, if not impossible."). These errors give us further reason to vacate the court's findings of fact and conclusions of law.

---

[9] In Illinois, for example, "[t]he trier of fact is limited to considering only evidence presented at trial and cannot base its determinations on private knowledge." *People v. Kent*, 444 N.E.2d 570, 575 (Ill. App. Ct. 1982). That limitation exists because a court's determinations made based on personal expertise can constitute denial of due process. *See People v. Wallenberg*, 181 N.E.2d 143, 145 (Ill. 1962) ("A determination made by the trial judge based upon a private investigation by the court or based upon private knowledge of the court, untested by cross-examination, or any of the rules of evidence constitutes a denial of due process of law."); *see also Bonhiver v. Rotenberg, Schwartzman & Richards*, 461 F.2d 925, 929 (7th Cir. 1972).

### 4. RK owes the amount based on the face of the note, unless further factfinding proves RK has sufficiently paid the $120,000 balance

[34]    After excluding RK's spreadsheets and the court's internal calculations, the record is depleted of evidence showing RK's alleged payments of its loan before the $120,000 note. "[W]hen a holder of a promissory note is in possession of the promissory note, possession of the promissory note 'raises a rebuttable presumption that a note was not paid.'" *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 112 (Iowa 2013) (quoting *In re Estate of Rutter*, 633 N.W.2d 740, 747 (Iowa 2001)).   And "[t]he burden is on the borrower to prove his or her defense of payment." *Id.*   Without RK's spreadsheets and the court's internal calculations, we are left with incontrovertible facts evident from the note's face: the Estates hold a promissory note on which RK owes $120,000, at 18% interest.

[35]    We remand for further factfinding on how much balance is due and owing on the note, as supported by admissible evidence, and whether RK's record of monthly $1,200 payments sufficiently established that the parties orally modified the 18% interest on the note's face.

## B.  Attorney's Fees

[36]    RK moved for attorney's fees after the trial court issued its findings.  The trial court denied that motion.  In its decision, the court found that the attorney's fees provision on the promissory note did not apply to either party since the note was invalid *ab initio*.  RA, tab 138 at 4 (Dec. & Order, Aug. 23, 2018).  The court further held neither party prevailed, and so neither could claim for attorney's fees.  *Id.* at 5-6.

[37]    The trial court's decision relied on its earlier conclusion that there was no balance due and owing on the promissory note, thereby finding the note—including its attorney's fees provision—void.  *Id.* at 4.  Given our *vacatur* on the trial court's earlier conclusions regarding the note's

balance, we also vacate the court's decision on attorney's fees and remand for further findings not inconsistent with this opinion.

## V.  CONCLUSION

**[38]**    We **VACATE** the trial court's findings of fact and conclusions of law from April 24, 2018. We also **VACATE** the court's decision and order on attorney's fees from August 23, 2018.  We **REMAND** for further proceedings not inconsistent with this opinion.

<table>
<tr><td align="center">/s/</td><td align="center">/s/</td></tr>
<tr><td align="center">F. PHILIP CARBULLIDO<br>Associate Justice</td><td align="center">ROBERT J. TORRES<br>Associate Justice</td></tr>
</table>

/s/
KATHERINE A. MARAMAN
Chief Justice
