[Civ. No. 12728. First Dist., Div. One. Dec. 18, 1944.]

LORRAINE B. TRIEST, Appellant, v. FRANK TRIEST, Respondent.

Clayton H. Garvey for Appellant.

Heller, Ehrman, White & McAuliffe for Respondent.

PETERS, P. J.—On November 8, 1940, plaintiff and appellant, Lorraine B. Triest, secured an interlocutory decree of divorce from defendant and respondent, Frank Triest. The custody of their minor child was awarded to the wife, and the husband was ordered to pay to his wife $100 a month for alimony and maintenance and support of the wife and child. On December 6, 1942, the minor child died. On December 10, 1942, the husband had the final decree entered.

From the date of the entry of the interlocutory decree, and

until either January or February, 1943, the husband made all the required $100 per month payments. At that time, without court order, he reduced the monthly payments to his wife to $50. On October 1, 1943, the husband, upon affidavit, secured an order to show cause why he should not be entirely released from the payment of any further alimony because of changed circumstances in his financial condition. The wife filed opposing affidavits asking that the request be denied and requesting an increase for mortuary and funeral expenses. In her affidavit, and at the commencement, during, and at the conclusion of the hearing, the wife contended that the husband had unlawfully reduced the payments to $50 a month; that at the time of the hearing he was in arrears in payments to the extent of $500; that he was therefore in contempt, and that under such circumstances an equity court would and should grant no relief until he first purged himself of the assumed contempt. The trial court, at the inception of the proceeding, held that the fact that the husband was in default in payments (assuming that to be a fact) would not *per se* bar the court from reducing the future payments in a proper case, and proceeded to hear the evidence. During the course of the hearing the trial judge concluded that under the circumstances disclosed by the evidence the husband, even if in default, was not in contempt, and at the conclusion of the hearing ordered the alimony and support order reduced, prospectively, from $100 to $1.00 per month. From this order the wife appeals.

The appellant makes no challenge of the sufficiency of the evidence to support the reduced order, her sole contention being that the trial court erred in granting relief to the husband when he was in arrears in his alimony payments.

The law is well settled that the court possesses power to modify an alimony order because of changed circumstances (Civ. Code, § 139); that the propriety of such an order depends on the facts and circumstances of each case; and that the propriety of such a modification rests largely in the discretion of the trial court. (See, generally, *Wilder* v. *Wilder*, 214 Cal. 783 [7 P.2d 1032]; *Wylie* v. *Wylie*, 26 Cal.App.2d 167 [79 P.2d 152]; *Willen* v. *Willen*, 119 Cal.App. 483 [6 P.2d 554]; *Greene* v. *Greene*, 86 Cal.App. 275 [260 P. 845]; *Mathews* v. *Mathews*, 55 Cal.App. 661 [204 P. 27].)

It is also a well settled proposition in most jurisdictions, including California, that the existence of accrued and unpaid alimony does not *per se* prevent the court from grant-

ing a modification as to future installments. (*Merritt* v. *Merritt*, 220 Cal. 85 [29 P.2d 190]; *Weydeveld* v. *Weydeveld*, 100 Colo. 301 [67 P.2d 72]; *Craig* v. *Craig*, 163 Ill. 176 [45 N.E. 153]; *Wiseman* v. *Wiseman*, 290 Ill.App. 535 [8 N.E.2d 960]; *Helkelkia* v. *Sonzinski*, 223 Ill.App. 30; *Erickson* v. *Erickson*, 194 Minn. 634 [261 N.W. 397]; *Suozzo* v. *Suozzo* 16 N.J.Misc. 475 [1 A.2d 930]; *Williams* v. *Williams*, 12 N.J.Misc. 641 [174 A. 423]; *Staples* v. *Staples*, 206 App.Div. 196 [200 N.Y.S. 583]; *Wiseman* v. *Wiseman*, 172 Misc. 114 [14 N.Y.S.2d 521]; *Kelly* v. *Kelly*, 144 Misc. 302 [258 N.Y.S. 367]; *Smith* v. *Smith*, 11 N.Y.S.2d 1015; *Gloth* v. *Gloth*, 154 Va. 511 [153 S.E. 879, 71 A.L.R. 700]; see, 27 C.J.S. p. 997, § 239g.) These cases hold that the existence of accrued and unpaid alimony is not conclusive on the court, but is merely one of the circumstances that may justify a refusal to modify, but that whether the order will be modified depends upon all the facts and circumstances of the particular case, and rests in the sound discretion of the trial court. They also establish that modification will not be denied even a husband who is in default when such denial would produce an inequitable result.

In *Merritt* v. *Merritt*, 220 Cal. 85 [29 P.2d 190], this precise problem was presented to the Supreme Court. That court quoted with approval the following from *Craig* v. *Craig*, 163 Ill. 176 [45 N.E. 153], (p. 88):

" 'If the existence of accrued and unpaid alimony should be held to absolutely prevent the court from altering, reducing or altogether abrogating future instalments of alimony, then it would result that in cases of pecuniary inability of defendant to pay and discharge all arrearages of alimony, the court would be powerless to grant relief as to future and further alimony, no matter what the changed conditions of the parties in the property, or how loudly the facts and circumstances might call for the equitable intervention of the court. The hands of a court of equity are not thus bound.' " In the Merritt case the trial court had refused to entertain the motion for modification because of its belief that a husband in default was not entitled to such relief. This order was reversed.

Of course, if the husband has willfully refused to comply with the order of the court and has a present ability to comply, he is in contempt, and no order of modification will be granted. But all defaults in alimony payments do not

constitute contempts. Where the husband is not in contempt and has not the present ability to comply with the order, a modification should not be refused simply because the husband is in arrears. To refuse such modification in a proper case would be inequitable and, in many cases, useless. (See note 22 Cal.L.Rev. 699.)

The factual situation in the present case was as follows: The original order did not fix separate amounts for alimony, and for the support and maintenance of the child. After the death of the child the respondent was of the opinion that he had been paying $50 a month as alimony and $50 a month for the support of the child. For this reason, he terminated the $50 payments for the support of the child upon her death. He testified that this was pursuant to an oral agreement with his wife, and produced a letter written by him to his wife referring to this agreement. The appellant denied the existence of such agreement.

Prior to the death of their child, and for some months thereafter, the parties were on friendly terms, and the record shows that both loved the child and did their best for her care and comfort. Early in 1943 the respondent saw appellant nearly every night, and finally proposed re-marriage. This offer was refused by the wife. This litigation followed several months thereafter.

Respondent testified that he had expended between $2,500 and $3,500 in connection with the child's illness, over $1,000 of which he paid out after January, 1943, and that he still owed substantial sums to various doctors for the child's care. He had to borrow money to pay some of these expenses. He also testified that during the early months of 1943 he furnished food to his wife and her sister, and paid various bills, and loaned his wife money which has not been repaid, and that the total of these sums exceeded the $50 a month that had been deducted from the alimony-support payments.

The respondent is 65 years of age. For the past several years he has represented a shirt manufacturer and has made a substantial salary. During the first four months of 1943 he averaged over $500 a month income from this source. In June he drew from this company $156.67; July, $9.97; August, $325.87; September, $218.37, and October, $84. He had some office expenses. He had had a drawing account of $49 a week net with this company, and starting in July the amounts received partially represented overdrafts. At the time of the

hearing he had overdrawn his earned commissions in excess of $300. The company had warned him that his drawing account must be reduced. The difficulty was that because of war conditions the employer was unable to furnish him with materials to sell. The respondent had taken employment with a haberdasher where he worked long hours two days a week, and from which source he earned about $60 a month. This was his only sure source of income at the time of the hearing. He had no bank account and no cash reserves—in fact, he still owed money to a bank borrowed to pay expenses in connection with the child's illness. He had expended all of his income earned in 1943 either in paying for the child's illness, or in paying past debts. He now lives in a back bedroom of a hotel. The appellant is employed at an assured salary of $108 per month, and, in addition, earns substantial commissions. She has some income from a nephew, and is the residuary legatee of her sister's estate. What she will receive from that estate is in dispute.

The evidence shows that the respondent, prior to his marriage to appellant, owned a diamond ring worth over $2,000. He testified that he had given this to his granddaughter prior to the hearing. He also owns an automobile worth $800, which he testified was indispensable in his business.

The theory of appellant is, that because respondent earned more than enough to pay the $100 a month up to September, and because he owned the ring and automobile on which loans could have been made, he was in contempt and should be denied relief. Aside from the question as to the legal effect of the agreement testified to by the husband to reduce the payments (on which question we announce no conclusion), and assuming without deciding that respondent was $500 in arrears in his payments, the evidence recited above sustains the implied finding of the trial court that respondent was acting in good faith. Rightly or wrongly he honestly believed that all he owed was $50 a month. That sum he paid regularly. He paid far in excess of the arrearage in connection with the child's illness, and paid in excess of the claimed arrearage directly or indirectly to his wife. At the time of the hearing he had no money at all with which to pay the claimed arrearage. He had not squandered his money. The appellant earns as much, if not more, than does respondent. To deny respondent relief (and appellant admits the evidence

supports the implied finding that such relief is warranted) would serve no useful purpose and would merely increase the arrearage far beyond respondent's ability to pay. That would be most inequitable and would serve no useful purpose at all. The trial court has power, if respondent's income increases, or that of appellant diminishes, to increase the award.

Appellant seeks to distinguish the Merritt case, *supra*, by pointing out that in that case during the period all the unpaid alimony accrued, the husband had no ability to comply, while in the instant case respondent could have paid the full $100 per month during most of the period. It is true that this is a factual distinction between the two cases. But the legal principle announced in the Merritt case is equally applicable to the factual situation here presented. The real issues in such cases are whether the husband has acted in good faith or whether he has deliberately flaunted the order of the court, and whether he has a present ability to comply with the order.

Appellant lays much stress on the fact that respondent owned the $2,000 ring and the automobile worth $800. The ring had been purchased by respondent long before he married appellant. He testified he had been keeping the ring intending ultimately to give it to his daughter, but after she died he determined to give it to his granddaughter (a child of a child by a prior marriage), and that he delivered it to the mother of the child for this purpose in June of 1943. Thus, according to his testimony, respondent no longer has any interest in the ring. So far as the automobile is concerned, respondent testified it was necessary in his business. It would only injure both parties to compel its sale.

The order appealed from is affirmed.

Knight, J., and Ward, J., concurred.