[Nos. 30735, 30736. Department Two. March 14, 1949.]

BESSIE PISHUE, *Appellant*, v. GEORGE SAM PISHUE *et al.*, *Respondents*.

BESSIE PISHUE, *Appellant*, v. SAM P. PISHUE, *as Guardian*, *Respondent.*[1]

[1]Reported in 203 P. (2d) 1070.

*Wettrick, Flood & O'Brien,* for appellant.

*Monheimer, Schermer & Mifflin,* for respondents.

SCHWELLENBACH, J.—On April 18, 1946, Bessie Pishue was granted an interlocutory order of divorce against her husband, George Sam Pishue. The order awarded her the custody of their child, and among other provisions, awarded her "until further order of the court" the sum of one hundred dollars per month for the maintenance and support of the child. A final decree of divorce was entered November 1, 1946.

On August 1, 1946, George Sam Pishue was, by decree of court, declared incompetent. He was committed to the Veterans' Hospital at American Lake, where he was confined for approximately six weeks, when he was released to his father, and has since remained with him. The father was appointed his guardian on April 7, 1947.

The one hundred dollar payments provided for in the interlocutory order were paid up to August 1, 1946 (the date George Sam Pishue was declared incompetent), and then ceased. Since that time, the husband has not worked, and, at the time of trial, the guardianship estate consisted of an automobile, and the sum of $1,779.63, which had been paid by the Veterans' Administration for the care and support of the incompetent veteran ward. The Veterans' Administration had, in addition thereto, paid the wife $427.80, at the rate of $13.80 per month, for the support of the child.

The $13.80 was taken out of the disability allowance for the veteran.

Two claims were filed in the guardianship proceeding, one by the wife in the sum of $1,100, plus one hundred dollars per month from July 1, 1947, based on the judgment; and one by the father, in his individual capacity, in the sum of $1,488.24, plus $40 per month, for sums advanced for the care, support, and maintenance of the ward. The father, as guardian, rejected the claim of the wife, and she commenced this action for the enforcement of her claim.

In the divorce action, the husband, through the father, as guardian, sought to have the interlocutory order and final decree modified by the entry of an order declaring that there were no sums due and owing from the defendant to the plaintiff, and suspending all payments for the care and support of the child. The two cases were consolidated for trial.

In the divorce action, the trial court modified the divorce decree by reducing from one hundred dollars per month to thirty-five dollars per month, the amount to be paid by the defendant to the plaintiff for the care and support of the minor child; making such modification effective as of August 1, 1946; and ordering that any sums in excess of thirty-five dollars per month from August 1, 1946, claimed as due for support money, be expressly canceled and extinguished; and ordering that there be credited against any amount due at thirty-five dollars a month from August 1, 1946, the sum of $427.80 received by plaintiff from the Veterans' Bureau, and leaving a balance due of $307.20.

In the guardianship proceeding, it was decreed that the claim of the plaintiff was approved in the sum of thirty-five dollars per month from August 1, 1946; and judgment was granted against the guardian in the sum of $307.20. This appeal follows from both judgments.

We find it necessary to discuss each case separately. There is no question as to the right of the court, in a divorce action, to modify a judgment relative to support money,

from time to time, as circumstances may require. Rem. Rev. Stat. (Sup.), § 988.

Respondent takes the position that, under either Rem. Rev. Stat. (Sup.), § 988 or § 988-2 [P.P.C. § 23-15 or § 23-19], the court can modify an interlocutory order as to support or alimony payments to operate retroactively. Rem. Rev. Stat. (Sup.), § 988, provides in part:

". . . which order as to alimony and the care, support and education of children may be modified, altered and revised by the court from time to time as circumstances may require; . . ."

Rem. Rev. Stat. (Sup.), § 988-2, provides substantially the same, but makes the statute applicable to orders entered prior to its enactment in 1933. The order in the present case having been entered in 1946, we will not concern ourselves with § 988-2.

The statute above quoted contains nothing to the effect that any modification or alteration thereunder may be entered to operate retroactively. The cases have consistently held otherwise, and in the absence of clear authority in the statute, if such authority could be given, the following cases are still the law of this state. *Beers v. Beers*, 74 Wash. 458, 133 Pac. 605; *Kinne v. Kinne*, 137 Wash. 284, 242 Pac. 388; *Boudwin v. Boudwin*, 159 Wash. 262, 292 Pac. 1017; *Phillips v. Phillips*, 165 Wash. 616, 6 P. (2d) 61. In the latter case, we said:

"As to installments of alimony,

" ' . . . the rights and liabilities of the parties become absolute and fixed at the time provided in the decree for their payment, and to this extent the judgment is a final one.' [Citing cases.]"

Respondent calls our attention to the recent cases of *St. Germain v. St. Germain*, 22 Wn. (2d) 744, 157 P. (2d) 981, and *Anderson v. Anderson*, 27 Wn. (2d) 122, 177 P. (2d) 83, in which we approved decrees modifying retrospectively payments due for support money by ordering those payments then due, from the date of the entry of the order of adoption of the minor child by the wife and

second husband, canceled and extinguished. In the cases just mentioned, we did not recede from the prior rule, but recognized that, under the provisions of Rem. Rev. Stat., § 1699 (the adoption statute), any installment falling due after an order of adoption, ceased to be a valid judgment.

That portion of the order in the divorce case modifying the interlocutory order and the final decree by reducing the monthly payments for support of the minor child, from one hundred dollars to thirty-five dollars, is affirmed. The remainder of the order is reversed.

We now concern ourselves with the question as to whether or not the wife can collect a judgment for support money from a fund consisting exclusively of moneys furnished by the Veterans' Administration, for the care, maintenance and support of an incompetent veteran husband.

■ Where an incompetent husband has an estate acquired either through his own efforts, or by gift or inheritance, that estate is liable for any judgments accrued for the support and maintenance of a minor child.

■ Both the Federal government and the states have given considerable attention to the problem of protecting veterans' benefits against the claims and processes of creditors. Federal statute 38 U. S. C., § 454(a), provides that payments of benefits made to, or on account of, a beneficiary, under any of the laws relating to veterans, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure, by or under any legal or equitable process, either before or after receipt by the beneficiary. These provisions are applicable to any benefit payable or paid by the Veterans' Administration.

"The Veterans' Administration is given broad powers of control and supervision of guardians and other fiduciaries for minor and incompetent beneficiaries of the Administration, and in connection with guardianship proceedings in state courts. He, or other officers of the Administration designated by him, may intervene in guardianship proceedings; he may require accountings; and he may ask the

removal of a guardian. Among other powers vested in the Administrator, is the authority to suspend or withhold payments to fiduciaries under certain circumstances.

"State courts have jurisdiction of guardianship proceedings for incompetent veterans. It is the policy of the Federal law that guardianship funds and trust estates resulting from the payment of veterans' benefits be administered and distributed under and in accordance with the laws of the state in which the beneficiary, guardian, or cestui que trust has his residence. The state courts will, as a rule, co-operate with the Veterans' Administration to the end that benefits paid to the committee or guardian of an incompetent veteran will be promptly and properly used for the veterans' benefit." American Law of Veterans 102, § 145.

*In re Gardner*, 220 Wis. 493, 264 N. W. 643, held that a divorced wife was not a "creditor" of an insane veteran, and hence was entitled to payment of accrued support money from accumulated payments made to the veteran's guardian, notwithstanding that part of the payments had been allotted for the support of a minor child.

In *In re Strozyk*, 156 Wash. 233, 286 Pac. 646, we said:

"Money coming into the possession of a guardian under the circumstances presented by the case at bar is not considered, in fixing the compensation of a soldier's guardian having custody thereof, in the same light as ordinary assets of a guardianship estate. The United States government has a measure of control over payments made by way of pensions to those who have served in its army or navy, or by way of war insurance or compensation to those veterans who have been, to a greater or less degree, disabled while in such service. The regulations of the veterans' bureau upon which appellant relies, in referring to compensation to be allowed a guardian, do not attempt to prescribe an absolute or fixed rule, but simply state a general policy. In such proceedings as that now before us, such regulations should be sympathetically considered by the courts and the spirit thereof followed where rulings in accordance therewith will work no injustice. We deem this a proper case for the application of the rule suggested by the regulations of the veterans' bureau above referred to."

Here, the trial judge, sitting as a court of equity, was called upon to determine the rights of the parties to a fund furnished entirely by the Veterans' Administration as a disability allowance to an incompetent veteran. The wife was not a "creditor" of the estate, and the judge could have allowed her entire claim. However, realizing that this fund was furnished by the government for the maintenance, care, and support of the incompetent veteran, and appreciating also the duty of the veteran to support his minor child, the trial judge, in the exercise of his equity powers, raised the payments to the child, from the funds allocated for the father's benefit, from $13.80 a month to thirty-five dollars a month. This was an exceptionally fair and equitable distribution of the fund.

The judgment in the guardianship case is affirmed. Both parties shall pay their own costs.

SIMPSON, ROBINSON, MALLERY, and HILL, JJ., concur.