[No. 38881.    Department One.    August 1, 1968.]

FERN A. CHASE, *Respondent and Cross-appellant,* v.
WILLIAM F. CHASE, *Appellant.**

*Reported in 444 P.2d 145.

*Whitmore, Powers, Manion & Ohnick,* for appellant.

*Matsen, Clark, Cory & Matsen* and *Newman H. Clark,* for respondent and cross-appellant.

HALE, J.—Fern and William Chase were married in 1937 and divorced in 1964. After the divorce, the husband became permanently disabled from heart disease and unable to work. The divorce and the husband's subsequent disability raise two main questions: One involves the disposition of a lump sum settlement received by the husband under his group insurance policy, and the other concerns reducing his child support payments to the extent of the child's social security benefits.

In 1933, William Chase joined the Navy; in 1937, he married Fern. They had 3 children. After 23 years in the Navy, Chase retired January 31, 1957, as a chief warrant officer with a retirement pay of $318.23 per month. A few days later he went to work for the Boeing Airplane Company in Seattle, where, as an employee, he signed up for a group life, disability and medical insurance program carried by the employer with the Aetna Life Insurance Company as insurer. Premiums for this insurance protection came from both Boeing Company contributions and deductions from Chase's salary commencing with his employment and continuing to the onset of disability in May, 1964. The policy provided for waiver of premiums during the employee's disability.

When Chase first went to work for Boeing on February 5, 1957, he had stated on a company medical questionnaire that he had "no health problems." His first heart attack occurred December 22, 1958, and he was then given medical leave of absence, but returned to work January 19, 1959. Five years later, he had another heart attack, March 13, 1964, and took another leave of absence from his job but returned to work a few weeks later, April 2, 1964. He and his wife then were and for a long time had been separated.

Shortly after this last return to work, Chase, in contemplation of divorce, signed a property settlement agreement April 27, 1964. An uncontested divorce hearing April 30, 1964, led to a decree of divorce entered May 7, 1964, which confirmed and adopted the property settlement agreement. After the uncontested hearing, but prior to the entry of the decree, Chase became ill while at work from recurring heart trouble and his doctor sent him immediately to the Public Health Hospital. During this hospitalization, which lasted until May 20, the doctor told him he should never return to work. Thus, although Chase was in the hospital May 7, 1964, when the uncontested divorce decree was actually entered, neither he nor his wife were then aware that he was totally and permanently disabled or entitled to a lump sum settlement for permanent disability from his Boeing group policy.

The divorce decree of May 7, 1964, gave plaintiff custody of their minor son, required the defendant to pay her $100 per month for his support and maintenance, and allowed the defendant liberal visitation. The property settlement agreement contained a provision that the support payments for the child "are based upon the present capacity of the defendant to maintain his job at Boeings and that if he should lose said job for reasons of health, the said support payments will have to be adjusted." In summary, at the time of the uncontested divorce hearing and subsequent decree, defendant was regularly employed at Boeing, drawing his Navy retirement, and paying into his group insurance through a payroll deduction. Being regularly employed at the time, he was, of course, not then entitled to social security payments either for himself or his child or to any benefits under the Boeing group insurance plan.

Between May 20, 1964, when he was released from the hospital with a prognosis of total disability, and the following October, defendant did not work. In October, he applied for disability benefits under his Boeing group policy and shortly thereafter for social security disability benefits which he subsequently received. Later, in the spring of 1965, defendant was offered and accepted a lump sum set-

tlement of $16,389.30 from the Aetna Insurance Company for his disability claims under the Boeing group policies, and in June, 1965, began receiving monthly social security benefits, too.

Included among these benefits, the United States paid to plaintiff wife $63.70 per month for the support of the minor child as the dependent child of a recipient of social security disability payments. 42 U.S.C. § 402(d). On learning that his child would receive $63.70 per month, the defendant deducted this sum and reduced his child support payments from $100 per month to $36.30.

Plaintiff petitioned to modify the divorce decree, seeking judgment for one-half the Boeing group policy settlement and also to recover the $63.70 per month deducted by the defendant from child support for a period of some 10 months. Defendant answered and petitioned to have the child support payments reduced by the amount of the social security benefits paid to his wife for the support of the minor child. Defendant now appeals from a decree awarding the plaintiff $8,194.65, constituting one-half the insurance settlement of $16,389.30, and an award to her of $660.50 for delinquent child support, representing the total social security deduction for a period of approximately 10 months. The plaintiff wife cross-appeals from that part of the decree which allowed the defendant to deduct in futuro the social security payments to the wife for their child, commencing February 1, 1966.

First, as to the award to the wife of one-half the insurance settlement, we note that the policy under which the settlement of $16,389.30 had been made was a part of a group plan entitled the Boeing Salaried Employees Group Life Insurance Plan. The policy provided for benefits to the employee's survivor, or to the employee for permanent total disability or dismemberment.[1] Premiums had been

[1] Coverage was described in an employee's pamphlet which stated: "If you become totally and permanently disabled while insured and before age sixty, from any cause whatsoever, and, after such disability has existed for a period of six months, the full amount of insurance will be paid to you in a lump sum or in instalments."

paid in part through deduction from the defendant's salary and except for those few months of his employment following the divorce decree—a period de minimus—would be deemed community funds.

Insurance proceeds in this state are property and not mere expectancies or choses in action, and, if the premiums are paid with community funds, the insurance proceeds are community property. *Occidental Life Ins. Co. v. Powers*, 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937). A community which pays the premiums on a group policy of life insurance acquires a property right in the insurance proceeds. *Small v. Bartyzel*, 27 Wn.2d 176, 177 P.2d 391 (1947). The wife's insurable interest in her husband's life does not terminate automatically with the entry of a divorce decree if the policy was taken out during marriage and premiums paid from community funds. *Northwestern Life Ins. Co. v. Perrigo*, 47 Wn.2d 291, 287 P.2d 334 (1955); *In re Leuthold's Estate*, 52 Wn.2d 299, 324 P.2d 1103 (1958). Favoring, as it does, the existence of community as opposed to separate property, the law will resolve the doubts between them in favor of a community status. *In re Salvini's Estate*, 65 Wn.2d 442, 397 P.2d 811 (1964). Accordingly, the group insurance policy, and the settlement made thereunder to the defendant, was community property.

Neither the property settlement agreement nor the decree mentioned the insurance nor did either make any disposition whatever of any avails therefrom which might come into existence in the future. Not until nearly a year after entry of the decree was the insurance settlement made. Thus, although the rights to the insurance proceeds accrued from month to month, this community asset of $16,389.30 was not in esse for distribution at the time of the decree. Accordingly, the lump sum insurance settlement constituted community property undistributed by the decree of divorce, and belonged to the parties as tenants in common.

As a general rule, if the court does not dispose of community property in a decree of divorce, rights to such

undistributed property vest equally in the spouses as tenants in common by operation of law. *Ambrose v. Moore,* 46 Wash. 463, 90 Pac. 588 (1907); *Olsen v. Roberts,* 42 Wn.2d 862, 259 P.2d 418 (1953). More particularly, if the right to insurance proceeds has accrued through payment of premiums with community funds, and the decree of divorce is silent as to their disposition, a tenancy in common in the insurance policies or the avails therefrom is thereby created. *Northwestern Life Ins. Co. v. Perrigo, supra.* The same rule of tenancy in common applies also to the retirement fund benefits. *Pittman v. Pittman,* 64 Wn.2d 735, 393 P.2d 957 (1964).

In the present case, the community, month by month, acquired an inchoate interest in the insurance avails through the husband's salary deduction. That the community interest did not ripen into a right to payment of a lump sum until after the decree did not affect the community's property rights in the lump sum. Consequently, the trial court properly held the $16,389.30 settlement awarded to the defendant after the entry of the divorce decree to be community property undisposed of and undistributed by the decree and the plaintiff and defendant were tenants in common therein. It correctly awarded the plaintiff as a tenant in common her one-half share of it. *Ambrose v. Moore, supra; Olsen v. Roberts, supra.*

Defendant assigns error to the order holding him delinquent in child support at the rate of $63.70 per month through December, 1965, amounting to $660.50. He contends that his unemployability, reduced income, and disability all warranted his reducing the child support payments by the amount of the social security benefits, and implies he was subsequently vindicated in this contention when the superior court modified the decree of divorce by allowing such a deduction in futuro.

Social security benefits are paid from a trust fund maintained and managed by the United States Government, but the right thereto depends largely upon payments made into the fund by employer and employee. The de-

fendant husband's social security benefits, therefore, were, insofar as he was legally capable of providing for his minor child through social security, a substitute for his earnings. 42 U.S.C. § 402(c). With the husband's disability and consequent loss of employment, the court could, in its discretion, properly treat the social security benefits paid to the wife for the minor child's support as a contribution by the father toward and deductible from the court-decreed support payments. 42 U.S.C. § 402. But this is discretionary and not automatic.

The disability and resulting entitlement to social security are changes in condition of the parties to be considered in a modification proceedings but do not give rise to a modification or deduction without affirmative action by the court for they are not necessarily determinative. The father may be independently wealthy; or he may, in the interim, have inherited property. Benefits from private or public retirement systems may have accrued and become payable to him. In short, many developments affecting the economic condition of the parties may have occurred which would not permit or warrant a modification of the decree to the extent of deducting the social security benefits for dependent children from the child support ordered in a decree of divorce.

■ At the time of the decree, the defendant, not then disabled, was regularly employed and paying into the social security system through salary deduction. His disability and right to social security benefits for himself and dependent child arose after the decree. His duty to pay the $100 per month for the support of his child came into existence with the decree and continued until modified by the court. In a situation warranting modification of child support or alimony, the court may make the modification effective either as of the time of filing the petition or as of the date of the decree of modification, or as of a time in between, but it may not modify the decree retroactively. This is in keeping with the general rule widely held in this country and prevailing in this state that provisions for

alimony, support and child support on a decree of divorce are not subject to retrospective modification and that any modification allowed must be prospective. *Wilburn v. Wilburn,* 59 Wn.2d 799, 370 P.2d 968 (1962); *Pishue v. Pishue,* 32 Wn.2d 750, 203 P.2d 1070 (1949); *Sanges v. Sanges,* 44 Wn.2d 35, 265 P.2d 278 (1953); and *Koon v. Koon,* 50 Wn.2d 577, 313 P.2d 369 (1957). Accordingly, modification of support and alimony may be allowed as of the time of commencing the modification proceedings. *Kinne v. Kinne,* 137 Wash. 284, 242 Pac. 388 (1926); *Sanges v. Sanges, supra.*

At the time defendant began deducting the social security payments, he had no petition for modification pending; the original divorce decree was still in effect. His cross-petition to modify had not been on file during the period for which he was held delinquent. Accordingly, the court properly disallowed the defendant's deduction of the child's social security payments and correctly held the defendant to a continual obligation to pay the $100 per month until an effective modification of the decree.

As to the wife's cross-appeal from the order modifying the decree, and which allowed future deductions of social security benefits from the child support, we find that a change in the conditions of the parties occurring after the divorce warranted such a modification.

The judgments and order of the trial court are affirmed on the husband's appeal and the wife's cross-appeal. Respondent wife, being largely the prevailing party, shall recover her costs on appeal.

Affirmed.

FINLEY, C. J., ROSELLINI and McGOVERN, JJ., and LANGENBACH, J. Pro Tem., concur.