Argued and submitted May 23,
affirmed as modified November 17, 1980,
reconsideration denied January 22,
petiton for review allowed March 17, 1981
See later issue Oregon Reports

In the Matter of the Marriage of

## COPE,

*Appellant - Cross-Respondent,*
*and*
## COPE,
*Respondent - Cross-Appellant.*

(No. 34149, CA 14619)

619 P2d 883

James A. Norman, Judge (Order Denying Motion for Modification of Decree).

John C. Warden, Judge (Order Denying Motion to Quash)

Cameron C. Thom, Coos Bay, argued the cause for appellant - cross-respondent. With him on the briefs was McInturff, Thom & Collver, Coos Bay.

Blair J. Henningsgaard, Coos Bay, argued the cause for respondent - cross-appellant. With him on the briefs was Bedingfield, Joelson and Gould, Coos Bay.

Before Joseph, Presiding Judge, and Richardson and Warren, Judges.

WARREN, J.

**WARREN, J.**

Father filed a motion for modification of a 1974 dissolution decree, seeking: (1) custody of his minor child; (2) a determination that he was not in arrears in his child support payments; and (3) termination of his obligation to pay child support. Mother countered with a motion to quash service on the ground that the Oregon court lacked jurisdiction to determine custody. Her motion to quash was denied. Trial of the issues was bifurcated. On January 15, 1979, it was determined that father was not in arrears in his child support payments and that his obligation to pay child support should be terminated as long as the child continues to receive monthly Social Security benefits in excess of $150. On May 7, 1979, the trial court denied father's motion for change of custody. Father appeals from this ruling.

Mother contends that the trial court properly denied the motion for change of custody because father failed to prove that a sufficient change of circumstances had occurred. Mother cross-appeals, assigning as error: (1) the denial of her motion to quash service for lack of jurisdiction; and (2) the determination that father was not in arrears in his child support obligation.

We first consider the threshold question of whether Oregon has jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), ORS 109.700 to 109.930.

The following events occurred in Coos County, Oregon. The parties were married in 1969 and in 1970 they had a child. In 1974, a dissolution decree was entered and, pursuant to an agreement of the parties, custody of the child was awarded to mother. The decree was amended in 1977 in accordance with the parties' stipulation, which provided for dual custody of the child. While mother was given physical custody of the child, father's visitation rights were increased.

In June, 1977, mother and the child moved to California. Since that time, the child has returned to Oregon on many occasions to visit his father and his numerous relatives who reside in Coos Bay.

■ A court which renders a custody decree normally retains continuing jurisdiction to modify the decree, *Tull and Tull,* 20 Or App 701, 533 P2d 376 (1975); ORS 107.135(1)(a), and under the UCCJA other states must defer to the continuing jurisdiction of that court as long as that state has jurisdiction within the meaning of the Act; ORS 109.840; Commissioners' Note, 9 Uniform Laws Annotated 154, §14 (Master ed 1979).

In determining whether Oregon has jurisdiction under the Act, we turn to ORS 109.730(1)(a) and (b), which provide:

> "A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>
> "(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons and a parent or person acting as parent continues to live in this state; [or]
>
> "(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

"Home state" is defined as:

> "[T]he state in which the child, immediately preceding the time involved, lived with his parents, or a parent * * * for at least six consecutive months * * *." ORS 109.710(5).

When these proceedings began, the child had been living in California for about a year and a half. Thus, Oregon does not have jurisdiction under ORS 109.730(1)(a), because it is no longer the child's home state.

■ However, ORS 109.730(1)(b) provides another basis for the exercise of jurisdiction by an Oregon court. Father's petition and affidavit reveal that both he and his child have a significant connection with Oregon. Father has lived in Oregon for many years and continues to reside here. The child was born in Oregon and lived here

until he was almost seven. Since he moved, he had made many trips to Oregon to visit his father and his relatives. At the time father filed this motion, the child was visiting father in Coos Bay.

In addition to the significant connection of father and child to Oregon, there is also substantial evidence available here regarding the child's future care, protection, training, and personal relationships. For these reasons, we conclude that Oregon has jurisdiction under ORS 109.730(1)(b).[1]

A party seeking modification of a child custody provision in a dissolution decree must establish: (1) that there has been a substantial change in circumstances since the original decree, or that a material fact was unknown at the time of the decree, which is adversely affecting the child's welfare; and (2) that the proposed modification is in the child's best interests. *Gonyea v. Gonyea,* 232 Or 367, 375 P2d 808 (1962); *Pickens and Pickens,* 25 Or App 33, 548 P2d 170 (1976).

In his petition for modification and his attached affidavit, father alleged: (1) that substantial changes of circumstances have occurred in mother's lifestyle which have had a deleterious effect on the child's home environment; and (2) that mother is consciously seeking to terminate father's visitation rights. He urges that special consideration should be given to the fact that all previous matters had been submitted on stipulated facts.

As stated by the Supreme Court in *Ward v. Ward,* 156 Or 686, 690, 68 P2d 763, 69 P2d 963 (1937):

"If the court deems that a stipulation, entered into between the parties, regarding the custody and maintenance of minor children, is for the best interest of the minor children, the court *may adopt* such stipulation as a part of the decree, and *thereafter such decree,* in that

---

[1] This case is unlike the facts in *Settle and Settle,* 276 Or 759, 556 P2d 962 (1976), and in *Grubs v. Ross,* 47 Or App 631, 614 P2d 1225 (1980), where it was determined that the former home state of the children lacked jurisdiction under ORS 109.730(1)(b), because the children no longer had a significant connection with that state. In both *Settle and Settle* and *Grubs v. Ross,* the children had not lived in, or even visited in, their former home state for over 18 months.

respect, *will not be modified unless conditions of the parties have changed so that such provision would no longer be for the best interests of the minor children. \* \* \* "* (Emphasis supplied.)

Thus, although the parties' stipulations regarding custody of their children are worthy of consideration, they are not binding on a trial court, *Laurance v. Laurance,* 198 Or 630, 638, 258 P2d 784 (1953); however, once a parent stipulates that the other parent is a suitable person for the custody of the child, that stipulation constitutes an admission which is evidence on the question of parental fitness. *Laurance v. Laurance, supra,* 198 Or at 638.

The trial court in the present case opined that "[i]f this case were coming up today on a divorce, I would give the child to the father." Nevertheless, the court concluded that father failed to establish that a sufficient change of circumstances had occurred to justify a change in custody.

■ After *de novo* review we agree that the evidence presented by father did not establish a change of circumstances warranting change of custody. At the hearing on this motion, father conceded that the respondent was a fit and able mother. Moreover, a psychologist who examined the child testified that the child was well cared for. Father's primary complaint is that the child has moved from Oregon and he no longer has the access to the child that he previously enjoyed. While it is apparent that father would provide the child with a good home, we find that the benefits to be gained from a change in custody here do not outweigh the potential damage done to the child if exposed to a shifting of parental figures. *Niedert and Niedert,* 28 Or App 309, 313, 559 P2d 515 (1977).

Lastly, we must decide whether the trial court properly determined that father was not in arrears as to his child support obligation and that his support obligation should be terminated as long as the child receives Social Security benefits in excess of $150.

The decree of dissolution required father to pay the mother $150 per month child support. Said sum was to be paid through the clerk of the court. In 1977, father's

obligation was reduced to $1,500 per year.[2] The decree was modified again in November, 1978, to require all future support payments be sent to the Department of Human Resources (DHR).

Apparently in January, 1978,[3] mother, for the benefit of the child began receiving $102.60 per month in Social Security benefits due to the father's classification by the Social Security Administration as permanently and totally disabled.

At that time, father *sua sponte* reduced his monthly support payments by $102.60, paying only $22.40 per month to the clerk of the court; thus, the sum of the child's Social Security benefits and father's payments equalled father's decreed monthly child support obligation. In July, 1978, the Social Security payment to the child was increased to $150.70. Nonetheless, from July through September, 1978, father continued paying the clerk of the court $22.40 per month;[4] however, father ceased making these payments in October, 1978.

The trial court agreed with father's contention that his child support obligation for 1978 was paid in full because his payments, coupled with the payments made by the Social Security Administration, met or exceeded his monthly obligation.

Mother contends that the trial court's decision to credit the child's Social Security benefits against father's support obligation was in effect a retroactive modification of an accrued installment judgment resulting

---

[2] Under this modification payments were to be made at the rate of $150 per month, with no payment required in February or July.

[3] On appeal, the mother contends that father was in arrears only in 1978. The father's exhibit number one indicates that Social Security payments for the child began earlier than 1978, together with the father's concomitant deductions. However, because the mother only challenges the payments during 1978, we will likewise limit our consideration to that period of time.

[4] In her brief before this court, the mother states that the father made only six payments of $22.40 each. The only evidence adduced at trial was by the father, which showed nine payments of $22.40 each. Thus, we accept the father's figures as to the number of payments. We also note that many of the figures and dates found in the mother's brief were both conflicting and erroneous.

from the support decree. She maintains such action is prohibited by ORS 107.135(2), which provides:

"The decree is a final judgment as to any instalment or payment of money which has accrued up to the time either party makes a motion to set aside, alter or modify the decree, and the *court does not have the power to set aside, alter or modify such decree,* or any portion thereof, *which provides for any payment of money,* either for minor children or the support of a party, *which has accrued prior to the filing of such motion."* (Emphasis supplied.)

■ While this statute has been construed to allow a court to modify a decree retroactive to the filing date of the motion, it does not permit a court to set aside, alter or modify the judgments as to installments which accrued prior to the filing of the motion. *Shelley v. Shelley,* 204 Or 436, 283 P2d 663 (1955); *Briggs v. Briggs,* 178 Or 193, 165 P2d 772 (1946); *Alspaugh and Alspaugh,* 44 Or App 505, 605 P2d 1386 (1980).

In *Alspaugh and Alspaugh, supra,* the child at the age of 17 left the home of the custodial parent. The father, who had been ordered to pay child support until she turned 21, stopped making support payments upon receiving information that his daughter had moved. When the daughter reached the age of 21, the father was in arrears on his child support obligation in the sum of $4,591.32. Thereafter, the mother brought suit to collect the arrearages. Even though the trial court found that the mother did not have custody of the child during the time the father was in arrears and that the mother had expended only $830 on the child's behalf, we held that where the father became aware of the changed circumstances and did not move to modify the decree, accrued installments became final judgments under ORS 107.135(2) and they could not be set aside, altered or modified retroactively.

In a Washington case that is factually analogous to the case before us, the father was ordered by the dissolution decree to pay the mother $100 per month for the support of their minor child. *Chase v. Chase,* 74 Wa2d 253, 444 P2d 145 (1968); *accord, Hepton v. Hepton,* 25 Wash App 229, 605 P2d 1288 (1980). The father was subsequently disabled and

began receiving monthly Social Security benefits. In addition thereto, the Social Security Administration paid the mother $63.70 per month for the support of the child, as the dependent child of a recipient of Social Security disability benefits. On learning of this payment, the father deducted this sum and reduced his child support payments from $100 per month to $36.30. The mother petitioned the court to recover the $63.70 per month the father had deducted for approximately 10 months from his child support obligation. The father answered and petitioned to have the child support payments reduced, both retroactively and prospectively, by the amount of the Social Security benefits paid to his wife for the support of his child.

In disallowing the father's retroactive deduction of the Social Security payments from his support obligation and in requiring him to pay the full amount of child support decreed, the Washington court stated:

"* * * His duty to pay the $100 per month for the support of his child came into existence with the decree and continued until modified by the court. In a situation warranting modification of child support or alimony, the court may make the modification effective either as of the time of filing the petition or as of the date of the decree of modification, or as of a time in between, but it may not modify the decree retroactively. This is in keeping with the general rule widely held in this country and prevailing in this state that provisions for alimony, support and child support on a decree of divorce are not subject to retrospective modification and that any modification allowed must be prospective. * * *" *Chase v. Chase, supra,* 444 P2d at 149.

The court opined:

"The disability and resulting entitlement to [S]ocial [S]ecurity are changes in condition of the parties to be considered in a modification proceedings but do not give rise to a modification or deduction without affirmative action by the court for they are not necessarily determinative. The father may be independently wealthy; or he may, in the interim, have inherited property. Benefits from private or public retirement systems may have accrued and become payable to him. In short, many developments affecting the economic condition of the parties may have occurred which would not permit or warrant a modification

of the decree to the extent of deducting the [S]ocial [S]ecurity benefits for dependent children from the child support ordered in a decree of divorce." 444 P2d at 149.

The *Chase* court found a change in circumstances due to the father's disability and modified the decree to allow future deductions of Social Security benefits from the child support.

■ Consistent with the rationale of *Alspaugh* and *Chase,* we conclude here that father's *sua sponte* deduction of his child's Social Security benefits from his decreed support obligation constitutes an attempted retroactive modification of accrued installments, which is barred by ORS 107.135(2).

As pointed out by the Washington court in *Chase,* many reasons may exist why, despite the receipt of Social Security benefits, the father's support obligation should continue unchanged or should be modified in an amount not necessarily equal to the amount of Social Security benefits. The support awarded may have been less than needed to support the child because of the father's inability to pay the amount actually needed. Changes in the father's obligation to pay support should be made only with the approval of the court upon a showing of changed circumstances.

■ We believe that the Washington court's reasoning in *Chase,* is more consistent with our prior decisions under ORS 107.135(2) and precludes father's deduction of the Social Security payments made to mother on behalf of the child. We find, however, that a change of circumstances has occurred due to father's disability. *See Thompson and Thompson,* 25 Or App 421, 549 P2d 683 (1976). We, therefore, affirm that portion of the trial court's order which terminated father's obligation to pay child support through the Department of Human Resources during the continuance of the child's entitlement to Social Security benefits. This modification is effective as of December 26, 1978, the filing date of the motion for modification. *Briggs and Briggs, supra,* 178 Or at 200-01.

From the record we have determined that the amount of father's support obligation for January 1,

1978, through December 26, 1978, is $1,500. Of this amount, father paid $201.60 in the manner prescribed in the decree. Accordingly, we find that the amount of father's support arrearage for 1978 is $1,298.40. After payment of this amount, the Department of Human Resources is directed to enter satisfaction of father's support obligation.

Affirmed as modified. No costs to either party.