304 S.E.2d 664

**Thomas I. ZIRKLE**

v.

**Janice P. ZIRKLE.**

No. 15610.

Supreme Court of Appeals of
West Virginia.

June 22, 1983.

**212**

Jay Montgomery Brown, Fairmont, for appellant.

Dennis H. Curry, Fairmont, for appellee.

McHUGH, Justice:

This action is before this Court upon the appeal of Thomas I. Zirkle, appellant and plaintiff below, from an order of the Circuit Court of Marion County wherein appellant was ordered to pay to Janice P. Zirkle, appellee and defendant below, alimony in the amount of $150.00 per month and arrearages in the amount of $2,664.70. In addition, appellant appeals from a subsequent order of the Circuit Court of Marion

County denying his petition for modification of the alimony award. This Court has before it the petition for appeal, all matters of record and the briefs of counsel.

On March 18, 1980, appellant and appellee were granted a divorce by the Circuit Court of Marion County upon the ground of irreconcilable differences.[1] In the same order, appellant was ordered to pay appellee alimony in the amount of $150.00 per month.

■ In March, 1980, after the alimony order was entered, appellant successfully prosecuted a claim with the United States Department of Labor for black lung benefits pursuant to Title IV of the Federal Coal Mine Health and Safety Act of 1969, *as amended,* 30 U.S.C. §§ 901 *et seq.*[2] On June 13, 1980, the appellee contacted the United States Department of Labor and applied for augmented black lung benefits based upon her dependency on appellant, such benefits to be received in a monthly check separate from the benefits of appellant.[3] Appellee's application was granted

---

1. The ground of irreconcilable differences may be found in *W.Va.Code,* 48–2–4(a)(10) [1981].

2. The Federal Coal Mine Health and Safety Act of 1969, Pub.L. No. 91–173, 83 Stat. 742 (codified as amended at 30 U.S.C. §§ 801 *et seq.*) was enacted in response to the Farmington Mine Disaster of November 20, 1968, wherein 78 coal miners lost their lives in a coal mine explosion. The Act's main purpose is to establish safety standards for the coal mining industry. *See* H.R.Rep. No. 563, 91st Cong. *reprinted in* 1969 U.S.Code Cong. & Ad.News 2503. In addition, the purpose of Title IV of the Act is:

> to provide benefits, in cooperation with the States, to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease; and to insure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis.

30 U.S.C. § 901(a) [1981].

3. Entitlement to augmented black lung benefits may be found in 20 C.F.R. § 725.201(d) which provides that "[i]n order for an entitled miner or surviving spouse to qualify for augmented benefits because of one or more dependents, such dependents must meet relationship and dependency requirements with respect to such beneficiary prescribed by or pursuant to the Act [Federal Coal Mine Health and Safety Act of

1969, *as amended,* 30 U.S.C. §§ 801 *et seq.*]. Such requirements are also set forth in this subpart."

20 C.F.R. § 725.206 provides:

> For the purposes of augmenting benefits with respect to any claim considered or reviewed under this part or Part 727 of this subchapter, an individual will be considered to be the divorced spouse of a miner if the individual's marriage to the miner has been terminated by a final divorce on or after the 10th anniversary of the marriage unless, if such individual was married to and divorced from the miner more than once, such individual was married to the miner in each calendar year of the period beginning 10 years immediately before the date on which any divorce became final.

The record indicates that appellant and appellee were married in 1949.

In addition, 20 C.F.R. § 725.207 provides:

> For the purpose of augmenting benefits, an individual who is the miner's divorced spouse (§ 725.206) will be determined to be dependent upon the miner if:
>
> (a) The individual is receiving at least one-half of his or her support from the miner (see § 725.233(g)); or
>
> (b) The individual is receiving substantial contributions from the miner pursuant to a written agreement (see § 725.233(c), (f)); or
>
> (c) A court order requires the miner to furnish substantial contributions to the individual's support (see § 725.233(c)).

and on September 8, 1980, the parties began receiving their respective checks, the appellant receiving monthly benefits in the amount of $254.00 and appellee receiving a monthly check in the amount of $127.00. The parties also received checks for accrued benefits equal to ten times their monthly entitlement.

The record indicates that on July 24, 1980, appellant was contacted by a representative of the United States Department of Labor and was informed that appellee had applied for augmented benefits and asked whether he would agree to the payment of the benefits in a separate check. On a Department of Labor form, the notation of the caller indicates that the appellant agreed to such an arrangement but only if he could deduct the amount appellee would receive from his monthly alimony payment. A note also appears that appellant was told by the representative of the Department of Labor that he could, in fact, deduct the benefits received by his ex-wife from his monthly alimony obligation and that he would only be required to pay appellee the difference between the benefits and the alimony payment which amounted to $23.00 per month.

In September, 1980, there was an exchange of correspondence between counsel for the parties wherein appellee requested appellant to continue to pay the full amount of alimony in addition to the augmented black lung benefits she was receiving. Appellant declined the request and continued to pay appellee only the difference between the augmented black lung benefits and the alimony payment.

Approximately one year later, on September 14, 1981, a hearing was held in the Circuit Court of Marion County upon the motion of appellee seeking modification of the original alimony award and to compel appellant to bring all arrears up to date. In a letter to the parties dated March 4, 1982, the trial court maintained the amount of the alimony award but ordered appellant to pay all arrearages because appellant could not "satisfy his support and maintenance obligations through Black Lung payments to his ex-wife."

After the receipt of the letter, appellant petitioned the Circuit Court of Marion County for modification of the alimony award claiming that appellee's receipt of augmented black lung benefits constituted a sufficient change of circumstances. In an order entered June 11, 1982, the trial court ordered appellant to continue the payment of $150.00 per month as alimony and to pay arrearages in the amount of $2,664.70. In a second order dated June 17, 1982, the trial court denied appellant's petition for modification of alimony because appellant did not have "clean hands" due to his arrearage in alimony payments.

Appellant assigns the following errors: (1) the trial court erred when it held that

---

Once the entitled person qualifies for augmented benefits, the miner or surviving spouse receives an increase in the amount of original black lung benefits. 20 C.F.R. § 725.520 provides, in pertinent part:

> (c) *Augmented benefit.* (1) When a miner or surviving spouse is entitled to benefits for a month for which he or she has one or more dependents who qualify under this part, the amount of benefits to which such miner or surviving spouse is entitled is *increased.* This increase is referred to as an "augmentation." (emphasis added).
>
> ....
>
> (3) The basic rate is augmented by 50 percent for one such dependent, 75 percent for two such dependents and 100 percent for three or more such dependents.

Thus, appellee's receipt of $127.00 per month as augmented benefits was in addition to appellant's receipt of $254.00 per month as black lung benefits.

Finally, 20 C.F.R. § 725.514(a) provides:

> If the basic benefit of a miner or of a surviving spouse is augmented because of one or more dependents, and it appears to the deputy commissioner that the best interests of such dependent would be served thereby, or that the augmented benefit is not being used for the use and benefit (as defined in this subpart) of the augmentee, the deputy commissioner may certify payment of the amount of such augmentation (to the extent attributable to such dependent) to such dependent directly, or to a legal guardian or a representative payee for the use and benefit of such dependent.

In the present case, appellant had voluntarily agreed to the payment of augmented black lung benefits to appellee in a separate check, although seemingly, based only upon the understanding that he could deduct the amount from his monthly alimony obligation.

appellant was not entitled to deduct from his alimony payment the amount of augmented black lung benefits appellee was receiving from the United States Department of Labor, and (2) the trial court erred in denying his petition for modification of alimony based upon the equitable doctrine of "clean hands."

## I

Appellant argues that but for the divorce order, appellee would not be entitled to augmented black lung benefits, and in any event, appellee is only entitled to support equal to the amount of the monthly alimony award. He, therefore, should be able to deduct appellee's receipt of such benefits from his monthly alimony obligation without a court order.

In West Virginia, the authority of a trial court to award or modify alimony, child support and child custody in a divorce proceeding is found in *W. Va. Code*, 48–2–15 [1980], which provides, in pertinent part:

Upon ordering a divorce, the court may make such further order as it shall deem expedient, concerning the maintenance of the parties, or either of them; and upon ordering the annulment of a marriage, or a divorce, the court may make such further order as it shall deem expedient, concerning the care, custody, education and maintenance of the minor children, and may determine with which of the parents or other proper person or persons the children or any of them, may remain; and the court may, from time to time afterward, on the verified petition of either of the parties, revise or alter such order concerning the maintenance of the parties, or either of them, and make a new order concerning the same, as the altered circumstances or needs of the parties may render necessary to meet the ends of justice....

■ In construing this statute, this Court has consistently held that the authority to award or modify the amount of an alimony decree is within the sound discretion of the trial court and, consequently, will not be disturbed unless there is a clear abuse of discretion. *Shannon v. Shan-*

*non*, 165 W.Va. 662, 270 S.E.2d 785 (1980); *Waller v. Waller*, 166 W.Va. 142, 272 S.E.2d 671 (1980). However, the authority of the trial court to modify an alimony award is only prospective in nature and does not extend to arrearages. *Holcomb v. Holcomb*, 122 W.Va. 293, 8 S.E.2d 889 (1940); *Biggs v. Biggs*, 117 W.Va. 471, 185 S.E. 857 (1936).

■ A predecessor to *W. Va. Code*, 48–2–15 [1980], was discussed in *Biggs v. Biggs, supra*, where this Court reversed a ruling by the Circuit Court of Wood County which had relieved an ex-husband of the duty to pay accrued alimony installments because the ex-husband had discovered new evidence of the ex-wife's marital misconduct. This Court held that:

Code ..., [48–2–15], ... authorizing a trial court, after awarding alimony, to revise or alter such allowance or make a new decree concerning the same, 'as the altered circumstances or needs of the parties may render necessary to meet the ends of justice,' pertains to future installments of alimony and does not authorize cancellation of accrued installments. The latter may be cancelled only on such ground as would warrant a court of equity in setting aside a decree because of fraud or other judicially cognizable and harmful circumstances in procuring the decree.

Syllabus, *Biggs v. Biggs, supra.*

Similarly, this rule has been applied to arrearages of child support. As this Court held in the syllabus in *Hopkins v. Yarbrough*, 168 W.Va. 480, 284 S.E.2d 907 (1981):

In the absence of fraud or other judicially cognizable and harmful circumstance in the procurement of a decree for child support, a circuit court is without authority to modify or cancel arrearages of a former husband's child support payments, which payments accrued prior to the date of the adoption of such children by the wife's subsequent husband. *W. Va. Code*, 48–4–5 [1969].

*See also Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980); *State ex rel. Canada v. Hatfield*, 163 W.Va. 548, 258 S.E.2d

440 (1979); *Rakes v. Ferguson,* 147 W.Va. 660, 130 S.E.2d 102 (1963).

In the case now before us, we must determine whether the trial court erred when it held that appellant could not deduct the amount of appellee's augmented black lung benefits from his monthly alimony payments and ordered him to pay appellee accrued alimony in the amount of $2,664.70. Our research does not reveal any cases dealing with black lung benefits specifically, however, with respect to similar disability benefits other jurisdictions hold that the receipt of disability benefits may not be deducted from the support obligations of one ordered to pay such support.

In *Cope and Cope,* 49 Or.App. 301, 619 P.2d 883 (1980), the Court of Appeals of Oregon faced an issue analogous to the one before this Court. In *Cope,* an ex-husband had been ordered to pay a certain amount of money in child support during his divorce proceeding. Sometime after the order, the mother began receiving Social Security benefits for the child "due to the father's classification by the Social Security Administration as permanently and totally disabled." 49 Or.App. at 307, 619 P.2d at 887. Upon the child's receipt of these benefits, the father began to *sua sponte* reduce his monthly child support payments by the amount the child was receiving from the Social Security Administration. The trial court allowed the deduction, however, the Oregon appellate court reversed and held "that the father's *sua sponte* deduction of his child's Social Security benefits from his decreed support obligation constitutes an attempted retroactive modification of accrued installments, which is barred by ORS 107.135(2)." 49 Or.App. at 310, 619 P.2d at 889.[4]

Quoting the Supreme Court of Washington in *Chase v. Chase,* 74 Wash.2d 253, 444 P.2d 145 (1968), the Oregon court stated:

The disability and resulting entitlement to [S]ocial [S]ecurity are changes in condition of the parties to be considered in a modification proceedings but do not give rise to a modification or deduction without affirmative action by the court for they are not necessarily determinative. The father may be independently wealthy; or he may, in the interim, have inherited property. Benefits from private or public retirement systems may have accrued and become payable to him. In short, many developments affecting the economic condition of the parties may have occurred which would not permit or warrant a modification of the decree to the extent of deducting the [S]ocial [S]ecurity benefits for dependent children from the child support ordered in a decree of divorce. *Chase, supra,* 444 P.2d at 149.

49 Or.App. at 309–310, 619 P.2d at 889.

We agree with the reasoning in *Cope, supra,* and hold that absent a court order, augmented black lung benefits received by an ex-spouse pursuant to Title IV of the Federal Coal Mine Health and Safety Act of 1969, *as amended,* 30 U.S.C. §§ 901 *et seq.,* and 20 C.F.R. §§ 725 *et seq.,* after an alimony award has been ordered by a court, which court did not consider such benefits, may not be deducted from an alimony obligation by the ex-spouse ordered to pay such alimony. As the Court of Appeals of Oregon stated in *Cope, supra:*

[M]any reasons may exist why, despite the receipt of Social Security benefits, the father's support obligation should continue unchanged or should be modified in an amount not necessarily equal to the amount of Social Security benefits. The support awarded may have been less than needed to support the child because of the father's inability to pay the

---

**4.** Similar to our rule in *Biggs v. Biggs, supra,* Oregon prohibits modification of accrued installments of alimony by statute. Or.Rev.Stat. § 107.135(d)(2) (1981) provides in pertinent part:

The decree is a final judgment as to any installment or payment of money which has accrued up to the time either party makes a

motion to set aside, alter or modify the decree, and the court does not have the power to set aside, alter or modify such decree, or any portion thereof, which provides for any payment of money, either for minor children or the support of a party, which has accrued prior to the filing of such motion.

amount actually needed. Changes in the father's obligation to pay support should be made only with the approval of the court upon a showing of changed circumstances.[5]

49 Or.App. at 310, 619 P.2d at 889.

The concerns are the same in the case of alimony. *W.Va.Code*, 48–2–16 [1969], prescribes the many factors to be weighed in modifying an alimony award that are reserved for sound judicial consideration.[6] As this Court stated in syllabus point 2 of *Yanero v. Yanero*, W.Va., 297 S.E.2d 863 (1982):

> By its terms, *W.Va.Code* § 48–2–16 [1976] requires a circuit court to consider the financial needs of the parties, their incomes and income earning abilities and their estates and the income produced by their estates in determining the amount of alimony to be awarded in a modification proceeding.

*See also F.C. v. I.V.C.*, 171 W.Va. 458, 300 S.E.2d 99 (1982); *Haynes v. Haynes*, 164 W.Va. 426, 264 S.E.2d 474 (1980); *Dyer v. Tsapis*, 162 W.Va. 289, 249 S.E.2d 509 (1978).

In the case now before us, only the trial court may modify an alimony order and only upon a showing of a substantial change of circumstances. *W.Va.Code*, 48–2–15 [1980]. Therefore, the Circuit Court of Marion County did not err when it disallowed appellant's deduction of appellee's augmented black lung benefits from his monthly alimony obligation and required appellant to pay all arrearages of alimony.

## II

Appellant further contends that the trial court erred when it refused to consider appellant's petition for modification of alimony because he did not have "clean

hands" due to his arrearages of alimony. Appellant argues that he was acting upon the advice of a representative of the United States Department of Labor when he deducted appellee's augmented black lung benefits from his monthly alimony payment, therefore, he "proceeded with as clean hands as could be reasonably expected from anyone in this situation."

The general rule regarding the issue of whether a trial court may consider a petition for modification of alimony when the petitioner is in arrears of alimony may be found in the editorial summary of Annot., 6 A.L.R.2d 835 (Supp.1982), which states:

> Where the husband is able to pay alimony or support money but does not do so, the trial court may refuse to grant him relief by way of reducing or terminating the payments, for the husband is in contempt of court. It has even been held that the trial court may refuse to hear the husband's application, or may stay proceedings on it, where he is in contempt of court. In some cases the courts have dismissed the petition or have stricken it from the files because the husband was in contempt of court.

West Virginia is in accord with the above general rule. As this Court held in syllabus point 1 of *Levine v. Levine*, 165 W.Va. 327, 270 S.E.2d 137 (1980): "In a suit for divorce, in which a petition is filed to modify a prior order pursuant to *W.Va. Code*, 48–2–15, the court may decline to hear the petition if the petitioner is in contempt of a previous decree." *See also Scott v. Scott*, 98 W.Va. 553, 127 S.E. 327 (1925).

However, wary of the possibility of inequitable results, some jurisdictions have gone a step further and held that:

> pertaining thereto, shall take into consideration, among other things, the financial needs of the parties, the earnings and earning ability of the husband and wife, the estate, real and personal, and the extent thereof as well as the income derived therefrom of both the husband and wife and shall allow, or deny, alimony or maintenance or modify any former order with relation thereto, in accordance with the principles of justice.

5. It should be noted that appellee's receipt of the augmented black lung benefits may be a change of circumstances sufficient for a modification of the original alimony award. However, that is an issue for the trial court to decide upon petition of the proper party.

6. *W.Va.Code*, 48–2–16 [1969], provides:

All judges and courts of this State, called upon to fix, ascertain and determine an amount as alimony, support or maintenance to be paid by a spouse or to modify any order

Where the husband believed in good faith that the circumstances excused him from complying in full with a decree for alimony, separate maintenance, or support, and his conduct was reasonable under the circumstances although not legally justifiable, the trial court may grant his application for a reduction notwithstanding the existence of arrears.

6 A.L.R.2d at § 3.[7]

Representative of this latter rule is *Triest v. Triest,* 67 Cal.App.2d 320, 154 P.2d 2 (1944), wherein the District Court of Appeals of California stated:

> [T]he existence of accrued and unpaid alimony is not conclusive on the court, but is merely one of the circumstances that may justify a refusal to modify, but that whether the order will be modified depends upon all the facts and circumstances of the particular case, and rests in the sound discretion of the trial court.

67 Cal.App.2d at 323, 154 P.2d at 4 (collecting cases).

In *Triest,* an ex-husband had been ordered to pay his ex-wife $100 per month in alimony and child support which he paid for a certain period of time. Sometime later, and without court approval, the ex-husband reduced the amount of alimony payments to $50 per month due to the death of his child and a change in his financial circumstances. After a few months had passed, the ex-husband petitioned the trial court to relieve him of any alimony obligation and the ex-wife responded that he should be denied relief because he had reduced the alimony payments and was consequently in arrears. The trial court held that his arrearages would not *per se* bar him from modifying his alimony and proceeded to reduce his alimony obligation from $100 per month to $1 per month. The California appellate court affirmed the action of the trial court stating that "if the husband has willfully refused to comply with the order of the court and has a present ability to comply, he is in contempt, and no order of modification will be granted. But all de-

faults in alimony payments do not constitute contempts." 67 Cal.App.2d at 323–24, 154 P.2d at 4.

In *Hulcher v. Hulcher,* 177 Va. 12, 12 S.E.2d 767 (1941), the Supreme Court of Virginia considered this issue. In *Hulcher,* the ex-husband had been ordered to pay $60 per month in alimony but after a period of time reduced his alimony without court approval to $50 per month based on a "disputed verbal statement" by the trial judge and because the financial conditions of the parties had changed. Finding that the trial court had not abused its discretion when it reduced the ex-husband's alimony obligation, the court stated that "default in payment of the full amount directed by decree was only a circumstance to be considered on the motion to deny him the right to be heard on his petition for reduction of the alimony." 177 Va. at 19, 12 S.E.2d at 769.

Based upon the above principles, we hold that arrearages of alimony, *per se,* is not a sufficient ground for a court to refuse to consider a petition for modification of alimony unless the court determines that the ex-spouse had the ability to comply with the order awarding alimony and the failure to pay the arrearages was contumacious, or willful, or intentional or otherwise in contempt of court. *Cf. Ledsome v. Ledsome,* 171 W.Va. 602, 301 S.E.2d 475 (1983) (regarding visitation rights and arrearages of child support). Of course, the primary standard to determine whether or not a trial court should modify an order awarding alimony is a substantial change of circumstances. *W.Va.Code,* 48-2-15 [1980]; *see also State ex rel. Ravitz v. Fox,* 166 W.Va. 194, 273 S.E.2d 370 (1980).

The trial court, therefore, erred when it refused to consider appellant's petition for modification of alimony based solely upon his arrearages in alimony payments. As stated above, the record does indicate that appellant was told by a representative of the United States Department of Labor that he could deduct appellee's augmented

---

**7.** For a general discussion of modification of alimony, *see* H. Clark, *Law of Domestic Rela-* *tions,* § 14.9 (1968).

black lung benefits from his monthly alimony payment. However, as we also noted above, the record is very sparse, and as a result, we do not have a sufficient record from which to make an informed decision based upon all the circumstances of the case. Therefore, we decline to affirm the circuit court's ruling based upon the facts before us.

For the foregoing reasons, the final orders of the Circuit Court of Marion County are hereby affirmed in part, reversed in part and remanded to that court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.